1   CARNEY WILLIAMS BATES
    PULLIAM & BOWMAN, PLLC
2   Hank Bates (Ca. # 167688)
    11311 Arcade Drive, Suite 200
3   Little Rock, Arkansas 72212
    Tel: 501-312-8500
4
    GOLOMB & HONIK, PC
5   Richard M. Golomb (*pro hac pending*)
    Ruben Honik (*pro hac pending*)
6   Kenneth J. Grunfeld (*pro hac pending*)
    1515 Market Street, Suite 1100
7   Philadelphia, Pennsylvania 19102
    Tel: 215-985-9177
8
    KU & MUSSMAN, PA
9   Brian T. Ku (*pro hac pending*)
    M. Ryan Casey (*pro hac pending*)
10  12550 Biscayne Boulevard, Suite 406
    Miami, Florida 33181
11  Tel: 305-891-1322
12  MILSTEIN ADELMAN, LLP
    Gillian Wade (Ca. # 229124)
13  Isaac Miller (Ca. # 266459)
    2800 Donald Douglas Loop North
14  Santa Monica, California 90405
    Tel: 310-396-9600
15
    Attorneys for Plaintiffs Frederick
16  and Tasha Smith, on behalf of themselves
    and all others similarly situated
17

E-FILING

**FILED**

JAN 13 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

18          **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
19

20  TASHA SMITH and FREDERICK          )   Case No. **CV 12-00222**
22  SMITH,                             )
                                       )
23          Plaintiffs,                )   **CLASS ACTION COMPLAINT**
                                       )
24  vs.                                )   Violations of:
                                       )   (1) Cal. Bus. and Prof. Code § 22250, *et*
25  INTUIT, INC., a Delaware corp.,    )       *seq.*;
                                       )   (2) Cal. Bus. & Prof. Code §17500, *et*
26          Defendant.                 )       *seq.*;
                                       )   (3) California's usury laws; and
27                                     )   (4) Cal. Bus. & Prof. Code §17200, *et*
                                       )       *seq.*
28                                     )   **JURY TRIAL DEMANDED**

- 1 -
CLASS ACTION COMPLAINT

BY FAX

COME NOW Plaintiffs Tasha Smith and Frederick Smith, on behalf of themselves and all others similarly situated, filing Plaintiffs' Class Action Complaint against Defendant Intuit, Inc. Plaintiffs seek certification of their claims against Defendant as a class action. Plaintiffs allege, based on personal knowledge as to Defendant's actions and upon information and belief as to all other matters, as follows:

## I.   PARTIES

1.    Plaintiff TASHA SMITH is a citizen of Arkansas.   Mrs. Smith utilized Defendant's online tax preparation services and software and Defendant facilitated a Refund Anticipation Loan for Mrs. Smith during the class period.

2.    Plaintiff FREDIERICK SMITH is a citizen of Arkansas.   Mr. Smith utilized Defendant's online tax preparation services and software and Defendant facilitated a Refund Anticipation Loan for Mr. Smith during the class period.

3.    Defendant INTUIT, INC. is a Delaware corporation with its principal place of business and nerve center at 2700 Coast Avenue, Mountain View, California 94043.

## II.   JURISDICTION AND VENUE

4.    This Court has jurisdiction over Defendant since its principal place of business is located in California.   Further, at all relevant times Defendant has regularly and systematically transacted business within the State of California as a vendor of tax return preparation software and tax preparation services.   Defendant derives substantial revenue from California residents.

5.    The Court has subject matter jurisdiction over this class action under the Class Action Fairness Act ("CAFA") because there are more than one-hundred class members, more than two-thirds of the class members that are citizens of a State different from Defendant, and the aggregate of class members' claims is more than $5 million. 28 U.S.C. § 1332(d).

6.    Venue is also proper in this Court because the Defendant has numerous offices in this District. 28 U.S.C. § 1391(b)(1).

7.    Venue is further proper in this Court due to Defendant's Terms of Service with Plaintiffs and the Class, which states in part:

- 2 -

CLASS ACTION COMPLAINT

California state law governs this Agreement without regard to its conflicts of laws provisions. To resolve any legal dispute arising from this Agreement, you and Intuit agree to the exclusive jurisdiction of state courts in Santa Clara County, California U.S.A. or federal court for the Northern District of California.

8.    Application of California law to the claims of Plaintiffs and all Class Members is therefore appropriate.

## III.   FACTS

### A.   E-Filing and the Electronic Tax Preparation Industry

9.    With the explosion of internet and personal computer usage, several companies in the 1990s began offering tax preparation and filing services to consumer taxpayers through tax preparation software.   In 2010, an estimated 35 to 40 million taxpayers used electronic tax preparation products, either over the internet or on their desktop computers, to file a tax return with the Internal Revenue Service ("IRS").

10.    Tax preparation software consists of two basic components: a user interface which prompts users to provide relevant information and an underlying tax engine which processes the information.   The interface is similar to that with a live tax preparer.   Through a series of questions, consumers provide information to the software, which is then processed by the tax engine for calculation.   The tax engine is a complicated software program based upon federal and state tax codes and regulations.

11.    The cost of tax preparation software can vary, depending on a number of factors. These may include the number of returns filed, whether the returns will be filed electronically ("e-filed"), whether the return is a federal or state return, the channel through which the consumer accesses the product (e.g., online vs. desktop software), and the amount of support the consumer desires for the process.

12.    The electronic tax preparation industry was turned upside down in 1998 by the Restructuring and Reform Act of 1998, which set goals to have at least 80 percent of all federal tax returns filed *electronically* by 2007. To meet this 80 percent benchmark, the IRS developed a

- 3 -

"Free File" program in 2001, whereby in theory the government would provide free e-filing services to the majority of taxpayers.

13.     But rather than develop its own software, the IRS decided to partner with established private sector firms.  In 2002, the Free File Alliance ("FFA") was formed, consisting of companies "engaged in the electronic tax preparation and filing industry" which included the major electronic tax preparation companies such as Defendant.  The FFA signed the Free Online Electronic Tax File Agreement with the IRS, whereby FFA members would provide free federal e-file services to individuals with an adjusted gross income ("AGI") equal to or less than that of 70 percent of all taxpayers for the prior year.  In exchange for providing this service, FFA members (including Defendant) did not have to compete with free software provided by the IRS.  For the 2010 tax year, taxpayers with an AGI of $58,000 or less would qualify.  On Intuit's Free File website, however, Intuit tells consumers that consumers with an AGI of $31,000 or less qualify (rather than $58,000), and then directs consumers who purportedly "don't qualify" to one of Intuit's paid products.  http://turbotax.intuit.com/taxfreedom/ (Oct. 18, 2011).

14.     Of course, providing a free service was not profitable, and the FFA had little incentive to make free filing publicized or accessible to consumers.  On the contrary, many FFA members including Defendant went to lengths to camouflage their free filing products.[1]  As a result, although 70 percent of taxpayers qualify for free e-filing, of the 26.3 million tax returns e-filed for the 2007 tax year, only 4 million (or 15 percent) were free returns filed through the FFA.[2]

**B.     Intuit's TurboTax**

---

[1] Defendant has further undertaken massive lobbying efforts to block or repeal state legislation providing free tax filing on state tax returns, most prominently in California recently.  *See* Dennis Ventry, *Intuit's end-run: Once again, it's targeting two free programs that help California taxpayers file their state returns*, L.A. Times, July 21, 2010, at http://articles.latimes.com/2010/jul/21/opinion/la-oe-ventry-intuit-20100721.
[2] U.S. Gen. Accounting Office, *Tax Administration: Many Taxpayers Rely on Tax Software and IRS Needs to Assess Associated Risks*, GAO-09-297 at 5 (Feb. 2009).

15.     Defendant is the nation's leading provider of electronic tax preparation and filing services, with revenues of $3.9 billion in the fiscal year ending July 31, 2011.[3]   Among Defendant's primary revenue generating products is tax preparation and filing software called "TurboTax".  In 2010, approximately 21 million federal tax returns prepared using TurboTax products were e-filed.

16.     In response to a series of questions, customers input information into TurboTax's software interface.  TurboTax's proprietary tax engine prepares the customer's taxes.  Following the completion of the electronic tax preparation services, Defendant offers customers the option to e-file their return or print out the return and mail it themselves to the IRS.

17.     In addition to a desktop version of the software, Defendant offers an online version ("TurboTax Online") where customers create an account and fill out their tax information through a web-based program at Defendant's website.  Customer information is stored online, at least through the current tax season, for access from multiple computers.

18.     Customers visiting the TurboTax webpage are presented with various TurboTax Online products, including the Free Edition, Basic, Deluxe, Premier, and Home & Business software packages.

19.     The poorly named TurboTax Online "Free Edition" is not free, for it requires additional fees (typically $19.95) to file a state return.  According to Defendant's website, "TurboTax Online is free until you decide to file, e-file or print your return."[4]   At that point, customers must "purchase [the] TurboTax Online federal and state products."[5]

20.     While Defendant prominently displayed and aggressively marketed its not-free "Free Edition," it conceals from plain view what it calls its "Freedom Edition", which provides

---

[3] Intuit Inc. Annual Report on Form 10-K at p. 3.
[4] Defendant Website, *Paying for TurboTax Online*, at http://turbotax.intuit.com/support/iq/Working-on-My-Return/Paying-for-TurboTaxOnline/GEN12234.html?_requestid=99538 (last accessed Oct. 11, 2011).
[5] Defendant Website, *Get Your Refund Fast: Efile Your 2010 Taxes with TurboTax*, at http://turbotax.intuit.com/best-tax-software/why-choose-turbotax/start-now-finish-faster.jsp (last accessed Oct. 11, 2011).

CLASS ACTION COMPLAINT

free e-filing for both federal and state tax returns (for states participating in the FFA). The "Freedom Edition," as opposed to the "Free Edition," is the free e-filing program that is the product of TurboTax's participation in the FFA, and subject to Defendant's agreement with the IRS. The Agreement, for example, requires Defendant to post links to free state filing programs from its free e-file website (in this case, "Freedom Edition") and does not allow for loans secured by tax refunds.

21.     Defendant's marketing and presentation steered many customers qualifying for free federal *and* state filing away from the free "Freedom Edition" and toward the non-free "Free Edition." Even if a consumer is able to find the "Freedom Edition" webpage, Defendant misrepresents the nature of the free e-filing program so eligibility appears more strict than it actually is.

22.     Defendant for example represents that non-military customers only qualify if they "earned $31,000 or less [as] Your Adjusted Gross Income" or "qualify for the Earned Income Credit",[6] but the actual Free File program is open to taxpayers with a 2010 AGI (individual or combined) of $58,000 or less.

23.     Defendant also represents that individuals qualifying for Free File program "also qualify for FREE STATE filing in the following states: AL, AR, AZ, GA, IA, ID, KY, MI, MN, MO, MS, NY, NC, ND, OK, OR, RI, SC, VA, VT, WV. If your state does not sponsor a Free File Program, you can still prepare and file a state return with the Freedom Edition for only $14.95 (credit card required)."[7] Defendant failed to disclose the twenty-seven states that either offer free e-filing (CA, CO, CT, DE, DC, IL, IN, KS, LA, ME. MD, MA, NJ, NM, OH, PA, UT, and WI) or don't require state income tax return filing for W2 wage income (AK, FL, NV, NH, SD, TN, TX, WA, and WY). In this way, Defendant steered lower income individuals (that did

---

[6] Intuit Tax Freedom Project webpage, http://turbotax.intuit.com/taxfreedom/ (last accessed Oct. 18, 2011).
[7] Id.

not have a credit card to pay what they thought would be state tax imposed fees) from one of those states back to its "Free Edition".

24. Defendant sought to maximize participation in the "Free Edition" because it, unlike in the "Freedom Edition" context, was not proscribed from using predatory refund anticipation loan products, a major source of income for Defendant. While the FFA Agreement with the IRS contemplates reasonable payment for some state tax returns, it prohibits predatory refund anticipation loans (the focus of Plaintiffs' complaint) as a source of financing.

**C.** **Defendant Markets and Facilitates Refund Anticipation Loan Products at Exorbitant Quadruple-Digit Interest Rates to Lower Income Individuals**

25. Refund Anticipation Loans ("RAL") are short-term loans or extensions of credit that are secured and repaid directly from the consumer's IRS tax refunds. These loans are marketed, arranged and facilitated by for-profit tax preparers such as Defendant. RALs include exorbitant finance charges that, when properly calculated in accordance with the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), often exceed 100% APR.

26. Although a significant profit source to Defendant and other for-profit tax preparers, these bank products provide little to no value to consumers at predatory interest rates and fees, often in conjunction with exorbitant tax preparation fees for straightforward tax filings. Tax filers can usually get their federal tax refund in 8 to 15 days by direct deposit, without getting a loan or paying any extra fees to companies like Defendant. The IRS usually issues refunds by check within 21 to 28 days.

27. The Department of Treasury has determined that RAL usage is highly concentrated in poor and minority communities.[8] Across the U.S., just 20% of all communities account for nearly 70% of all RALs.[9] The median adjusted gross income among RAL consumers is $19,768.[10]

---

[8] "Characteristics of User of Refund Anticipation Loans and Refund Anticipation Checks," U.S. Department of Treasury, 2010, at p. 1.
[9] Id. at p. 17-20.
[10] Id. at 16.

28.     Defendant markets RALs to its customers for whom it provides tax preparation services, as fees from these predatory bank products accounted for significant profits of Defendant.

**D.     Disclosure Requirements Under the Truth In Lending Act**

29.     TILA, and its implementing Regulation Z, 12 C.F.R. Part 226, establish requirements for accurate disclosure of interest rates and finance charges when creditors provide loans and extensions of credit to consumers.

30.     Defendant is a creditor and Plaintiffs and Class Members are consumers for purposes of TILA.

31.     Violations of TILA are determined on an objective standard, based on the representations in the relevant disclosure documents, with no necessity to establish the subjective misunderstanding or reliance of particular consumers.

32.     Finance charges within the meaning of TILA include fees and amounts charged by third parties where the contracting party requires the use of a third party or where the creditor retains a portion of the third-party charge.

**E.     California Refund Anticipation Loan Laws**

33.     Many states, including the state of California, have passed laws specifically targeting RALs and refund access checks ("RACs") in an effort to eradicate long-standing, deceptive and unconscionable practices in the for-profit tax preparer industry.  The California statutes governing RALs and tax preparers, Cal. Bus. And Prof. Code § 22250 *et seq.* ("California RAL laws"), focus on the practices of tax preparers like Defendant who market and facilitate RALs and RACs through third-party banks who actually provide the loans and the bank products.

34.     Under California's RAL laws, a RAL includes any "loan, whether provided by the tax preparer or another entity, such as a financial institution, in anticipation of, and whose payment is secured by, a client's federal or state income tax refund or by both." Cal Bus & Prof Code § 22251(f).

35.     California RAL laws define a "tax preparer" as a person or business entity, who, among other things, "assists with or prepares tax returns for another person or who assumes final responsibility for completed work on a return." Cal Bus & Prof Code § 22251(a)(1).   This includes business entities who have associated with it persons who "shall have as part of their responsibilities the preparation of data and ultimate signatory authority on tax returns or that holds itself out as offering those services or having that authority."

36.     Defendant is a "tax preparer," as defined by California RAL laws.  For example, Defendant's 2011 terms of service are entitled "Terms of Service for TurboTax Online Tax Preparation Services", and guarantee that Defendant "diligently works to ensure the accuracy of the calculations on every form prepared using TurboTax Online tax preparation software."

37.     California RAL laws prohibit tax preparers such as Defendant from engaging in certain practices with regard to the facilitating of RALs, requiring written disclosures of certain critical information about RALs, such as the finance charges and lower-cost alternatives. Specifically, prior to the client's completion of the RAL application, California RAL laws require all tax preparers/facilitators to provide the client with "a clear, written disclosure" conspicuously detailing information about the interest rate, fees and timing of the RAL, as well as alternative means to receive refunds from the IRS in a timely manner without exorbitant add-on charges. Cal Bus & Prof Code § 22253.1(d)(1).

38.     Additionally, prior to the client's consummation of the RAL transaction, a tax preparer/facilitator must provide a disclosure in either written or electronic form conspicuously detailing all fees associated with the loan, more cost-effective means of receiving refunds from the IRS, and the loan's interest rate as calculated by guidelines established by TILA.

39.     Perhaps the most critical disclosure required by California RAL laws is the interest rate for any loan product.  California RAL laws require all tax preparers to disclose the interest rate for RALs "using the guidelines established under the federal Truth in Lending Act (15 U.S.C. Sec. 1601 and following)."  Cal Bus & Prof Code § 22253.1(d)(2); *see also* Cal Bus & Prof Code § 22253.1(f)(2) (A tax preparer who facilitates or offers to facilitate a refund

CLASS ACTION COMPLAINT

anticipation loan is prohibited from "[m]isrepresenting a material factor or condition of a refund anticipation loan.").

40.     A tax preparer who violates any provision of California RAL laws is liable directly to the consumer for (a) statutory damages of $1,000, and (b) reasonable attorney's fees and costs of prosecution.  Cal Bus & Prof Code § 22257.

### F.     Defendant's Illegal Conduct Regarding its Refund Processing Option

41.     Throughout the Class Period, Defendant has facilitated RALs through arrangements with banking partners.  Defendant marketed and facilitated a RAL product it referred to as "Refund Processing Services".[11]  This "Refund Processing" payment option was "formerly known as Refund Transfer —no matter what it's called, it's a method a processing your refund to deduct TurboTax fees."[12]  As used herein, "Refund Processing Option", "RPO" and "RPO-RAL" refer to Defendant's practice of deducting fees from a consumer's federal tax return and encompass both Refund Processing and Refund Transfer, which are identical.

42.     TurboTax Online users are charged for the Defendant's tax preparation services and software and any additional services they might select at the conclusion of the tax preparation process.  In addition to paying immediately with a credit card, Defendant provides the option (RPO) of deferring payment of those fees until the tax refund has been received from the IRS, deducting these fees from the refund amount.   On information and belief, this component of these bank products expands the market for Defendant's tax preparation services, increases the amount that can be charged for electronic tax preparation services, and increases the fees collected by Defendant.

43.     During the Class period, Defendant, through its proprietary software, facilitated RPOs to its customers (including the Plaintiffs and all members of the Class), following common practices and procedures and using uniform forms, applications and disclosures as described

---

[11] Defendant Webpage, "Using Refund Transfer or Refund Processing Services to Pay TurboTax Fees"; at http://turbotax.intuit.com/support/iq/Tax-Refund/Using-Refund-Transfer-or-Refund-Processing-Services-to-Pay-TurboTax-Fees/GEN12098.html (last accessed Jan. 3, 2012).
[12] Id.

CLASS ACTION COMPLAINT

below.  RPOs entail the establishment of a deposit account at the participating bank[13] ("Deposit Account").  The Deposit Account is a non-interest-bearing account established for the sole purpose of receiving the consumer's federal tax refund and dispersing those funds in a limited manner.

44.     The consumer cannot make any other deposits to this dummy account or direct any other withdrawals.  When the consumer's tax return is sent to the IRS, the dummy account is identified as the destination for any refund to which the consumer may be entitled.  Once the IRS is notified, the refund destination cannot be changed.  If for any reason the consumer's refund is not deposited in the dummy account or if the refund is less than anticipated based upon Defendant's tax preparation services and/or fees, the consumer is still held liable for the full amount of the loan.

45.     When the consumer's tax refund is deposited into the Deposit Account, before any funds are disbursed to the consumer, funds are disbursed to pay, among other things:

a.     Refund Processing Fees or Refund Processing Service Fees (collectively, "Refund Processing Service Fees") (typically $29.95), some of which are received by Defendant;

b.     TurboTax Fees which include the fees and charges related to the preparation, processing and transmission of the customer's tax return owed to Defendant;

c.     Amounts to pay for additional products and services purchased plus applicable taxes; and

d.     Any other applicable debts owed including, for example, a $10 fee in the event that the customer provides incorrect banking information.

Any remaining funds are disbursed to the consumer either by direct deposit to a checking or savings account or direct deposit to a prepaid debit card.

---

[13] During the Class Period, these banks were University National Bank of St. Paul, MN and Santa Barbara Bank & Trust.

46.     RPOs are encompassed by RALs, as defined by California RAL laws.  With an RPO, Defendant grants deferral of payment for approximately 8 to 15 days (the time period needed to receive the tax refund).  Defendant provides no disclosure of the **quadruple-digit** interest rate or finance charge for the RTPO in violation of TILA, California RAL laws, and California's consumer protection laws.  *See, e.g.,* U.S. F.D.I.C. Amended Notice of Charges for an Order to Cease and Desist, *In the Matter of Republic Bank & Trust Company, Louisville Kentucky*, dated May 3, 2011 at ¶ 34 ("By failing to disclose to taxpayers in the Assisted Refund transactions that the TRAF [deposit account fee] are finance charges for deferral of the tax preparation fees owed, the EROs [such as Defendant] have violated the written disclosure requirements under TILA on a nationwide basis in each Assisted Refund transaction").

47.     Defendant receives a portion of the Refund Processing Service Fees.  Defendant's consolidated financial statements (available at Defendant's website) confirm receipt of such fees.

**G.     Factual Allegations as to Plaintiffs Tasha Smith and Frederick Smith**

48.     Mr. and Mrs. Smith, filing a joint return, purchased an RPO-RAL from Defendant in 2011 for the 2010 tax year.  Plaintiffs utilized TurboTax Online's electronic tax preparation software on or around February 8, 2011.  Defendant estimated Plaintiffs' federal refund to be $6,708 (federal) and $1,070 (state).  Defendant e-filed Plaintiffs' taxes.

49.     Defendant's fee for these services was $86.90.  Plaintiffs did not pay this fee at this time but deferred payment to be taken out of their tax refund, which would be direct deposited into a one-transaction dummy account (Deposit Account).

50.     Defendant charged Plaintiffs $29.95 to set up a Deposit Account to which the IRS deposited the tax refund of $6708.  Upon information and belief, Plaintiffs received their funds via direct deposit approximately 2 weeks after their return was filed.

51.     Plaintiffs purchased a RPO-RAL which entitled them to an approximate fourteen day loan of the Defendant's electronic tax preparation and filing fee ($86.90).  Thus $86.90 was the total amount financed or principal.

CLASS ACTION COMPLAINT

52.    The finance charge included the Refund Processing Service Fee ($29.95).

53.    Thus Plaintiffs paid $29.95 for an approximate 14-day loan of $86.90. The APR, properly calculated in accordance with TILA, was an exorbitant quadruple-digit interest rate. Such interest rates also violated California's usury laws.

54.    For their 2009 taxes, Plaintiffs similarly utilized Defendant's TurboTax Online tax preparation services for their refund, which Defendant calculated to be $6,605. Defendant's fee for these services was $86.90. Plaintiff deferred payment to be taken out of their tax refund, and Defendant, using the dummy account, deposited the funds in Plaintiffs' account in approximately two weeks for a cost of $29.95 which Defendant took out of Plaintiffs' refund. Thus Plaintiffs in 2009 paid $29.95 in finance charges for an approximate 14-day loan of $86.90.

55.    For their 2008 taxes, Plaintiffs similarly utilized Defendant's TurboTax Online tax preparation services for their refund, which Defendant calculated to be $11,493. Like in 2010 and 2009, Plaintiffs deferred payment of Defendant's tax preparation fees to be taken out of their tax return. Defendant, using the dummy account, deposited the funds in Plaintiffs' account in approximately two weeks for a cost of (upon information and belief) $29.95 which Defendant took out of Plaintiffs' refund. Like the 2010 and 2009 tax years, Plaintiffs were charged exorbitant finance fees ($29.95) to defer payment of a small amount for a short-term period.

56.    Defendant failed to provide any disclosure regarding the APR or finance charges regarding these loans.

## IV.    CLASS ACTION ALLEGATIONS

### A.    Class Definition

57.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action for themselves and on behalf of a class defined as:

> All natural persons who after January 12, 2008 used TurboTax Online and received a Refund Processing Option payment facilitated by Defendant and Defendant's fees were deducted from the deposit account established for the Refund Processing Option payment.

58.   Specifically excluded from the Class are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases of all their claims for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

59.   Plaintiffs further bring this action on behalf of themselves and two further subclasses defined as:

> **Usurious Interest SubClass**
> All natural persons who after January 12, 2009 used TurboTax Online and received a Refund Processing Option payment facilitated by Defendant and Defendant's fees were deducted from the deposit account established for the Refund Processing Option payment.

> **Usurious Interest and Penalty SubClass**
> All natural persons who after January 12, 2010 used TurboTax Online and received a Refund Processing Option payment facilitated by Defendant and Defendant's fees were deducted from the deposit account established for the Refund Processing Option payment.

60.   Specifically excluded from the Subclasses are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases of all their claims for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

**B.   Rule 23(a) Prerequisites**

61.   **Numerosity.**   The Class is so numerous that joinder of all members is impracticable.   At this time, Plaintiffs do not know the exact size of the Class.   Based on information and belief, the Class is comprised of at least thousands of members so as to render joinder of all Class Members impracticable.

62.   **Commonality.**   Common questions of law and fact predominate over individual issues.   There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class.   The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a.   Whether Defendant disclosed to consumers for which it facilitated RPOs the interest rate and/or finance charge, calculated as required by TILA;

b.   Whether Defendant's failure to disclose the interest rate and/or finance charges as required by TILA violated California RAL laws;

c.   Whether Defendant's failure to disclose the interest rate and/or finance charges as required by TILA violated Cal. Bus. & Prof. Code §17200, *et seq.*;

d.   Whether Defendant provided any disclosure of the interest rate and/or finance charge for the RPOs it facilitated to consumers in California during the Class Period, and if not whether such failure violated California RAL laws and/or Cal. Bus. & Prof. Code §17200, *et seq.*;

e.   Whether the $29.95 Refund Processing Service Fee constitutes interest under California's usury laws (for the Subclasses);

f.   Whether Defendant's conduct regarding the RPO transactions violated California's usury laws (for the Subclasses); and

g.   Whether Defendant's violations of California's usury laws constitutes a violation of Cal. Bus. & Prof. Code §17200, *et seq.*

63.   **Typicality.**   Plaintiffs' claims are typical of the other Class Members' claims.   As described above, Defendant uses common practices, applications, forms and disclosures in committing the conduct that Plaintiffs allege damaged them and the Class Members.   Defendant uniformly violated California's RAL, consumer protection, and usury laws by engaging in the conduct as described above, and these violations had the same effect on each member of the Class.

64.   **Adequacy.**   Plaintiffs are adequate representatives of the Class because they fits within the class definition and their interests do not conflict with the interests of the members of

the Class and Subclasses they seek to represent. Plaintiffs will prosecute this action vigorously for the benefit of the entire Class. Plaintiffs are represented by experienced and able attorneys. Class counsel have litigated numerous class actions and complex cases, and Plaintiffs' counsel intend to prosecute this action vigorously for the benefit of the entire Class. Plaintiffs and class counsel can and will fairly and adequately protect the interests of all of the members of the Class.

**C.     Rule 23(b) Prerequisites**

65.     Questions of law and fact common to the Class predominate over questions affecting only individual Members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages and/or restitution sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class to effectively redress the wrongs done to them on an individual basis. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

66.     Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

**V.     CAUSES OF ACTION**

**A.     FIRST CAUSE OF ACTION: VIOLATION OF CALIFORNIA REFUND ANTICIPATION LOAN LAWS (CAL. BUS. AND PROF. CODE § 22250 *ET SEQ.*)**

67.     Plaintiffs incorporate by reference each of the foregoing allegations.

68.     The named plaintiffs and all class members are "clients" as defined by Cal Bus & Prof Code § 22251(e).

69.     Defendant is a "tax preparer" as defined by Cal Bus & Prof Code § 22251(a).

70.     The RPOs facilitated by Defendant are RALs as defined by Cal Bus & Prof Code § 22251(f).

71.     Defendant violated Cal Bus & Prof Code §§ 22253.1(d)(1)-(2) and Cal. Bus. & Prof. Code § 22253.1(f)(2) by failing to disclose, at multiple points throughout the RAL facilitation process, forms separate from the bank product application articulating the interest rate "using the guidelines established under the federal Truth in Lending Act (15 U.S.C. Sec. 1601 and following)" for each RPO it facilitated for a Class Member.  For each RPO, Defendant failed to disclose any interest rate or finance charge and failed to disclose the Refund Processing Service Fee as a finance charge.

72.     Defendant violated Cal. Bus. & Prof. Code §§ 22253.1(d)(1)-(2), and Cal. Bus. & Prof. Code § 22253.1(f)(2) by failing to disclose to each Class Member who received an RPO in a clear, written disclosure containing the RAL fee schedule.

73.     Defendant violated Cal. Bus. & Prof. Code §§ 22253.1(d)(1)-(2), and Cal. Bus. & Prof. Code § 22253.1(f)(2) by failing to disclose to each Class Member who received an RPO in either written or electronic form the estimated annual percentage rate for the RPO, using the guidelines established under TILA.

74.     Defendant violated Cal. Bus. & Prof. Code §§ 22253.1(d)(1)-(2), and Cal. Bus. & Prof. Code § 22253.1(f)(2) by failing to disclose in a clear, written disclosure containing the RAL fee schedule.

75.     For each violation set forth herein Defendant is liable under Cal. Bus. & Prof. Code § 22257 for (a) statutory damages of $1,000, and (b) reasonable attorney's fees and costs of prosecution.  Cal. Bus. & Prof. Code § 22257.

**B.      SECOND CAUSE OF ACTION:  VIOLATION OF CAL. BUS. & PROF. CODE §17500, *ET SEQ.* – FALSE ADVERTISING.**

76.     Plaintiffs incorporate by reference each of the foregoing allegations.

77.     Defendant is a "person" for the purposes of Cal. Bus. & Prof. Code §17506.

78.     Pursuant to Cal. Bus. & Prof. Code §17500, it is unlawful for any person or business to make untrue or misleading representations with regard to the services they advertise, with the intent of inducing customers to purchase services, among other things.

79.     Each of Defendant's violations of California RAL laws set forth above in the First Cause of Action is also a violation of Cal. Bus. & Prof. Code §17500.

80.     In addition, Defendant violated Cal. Bus & Prof. Code §17500, *et seq.* by not accurately disclosing the finance charge for each RPO purchased by a Class Member within the Class Period.   Indeed, for each RPO Defendant failed to disclose any interest rate or finance charge.  Each of these acts constitutes a violation of Cal. Bus. & Prof. Code §17500, *et seq.*, in that Defendant, with the intent to induce California consumers to purchase tax preparation services and RPOs, has made and disseminated untrue and misleading statements, which it knew or reasonably should have known were untrue or misleading at the time the statements were made.

81.     Plaintiffs and the Class Members have been damaged as a result of Defendant's unfair, unlawful and deceptive conduct alleged herein.   They are entitled to injunctive relief and restitution, in an amount to be proven at trial.

## C.     THIRD CAUSE OF ACTION: VIOLATION OF CALIFORNIA'S USURY LAW

82.     Plaintiffs incorporate by reference each of the foregoing allegations.

83.     Defendant violated Cal. Const., art. XV, § 1 and Cal. Civ. C. § 1916-1 *et seq.* ("California's usury laws").

84.     Plaintiffs and the Subclasses are "borrowers" for the purposes of California's usury laws.

85.     Through its RPO scheme, Defendant charged Plaintiffs and the Subclass Members a fee (the Refund Processing Service Fee) in exchange for extending the time for Plaintiffs and the Subclass Members to pay an obligation due to Defendant (the charges associated with

Defendant's electronic tax preparation and filing services).    This transaction constitutes a forbearance and/or loan to which California's usury laws apply.

86.    The Refund Processing Service Fee was paid by Plaintiffs and the Subclasses solely or primarily for the forbearance and/or loan. Defendant's attempt to construe the fee as an administrative fee incidental to the underlying obligation was a ruse and merely a device through which usurious interest would be exacted by Defendant.

87.    The Refund Processing Service Fee constitutes interest under California's usury laws. As such, the transaction violated California's usury laws at the time the transaction was first made.

88.    With the RPO transactions, Defendant took and received interest paid by Plaintiffs and the Subclasses well in excess of the statutory maximum permitted by California's usury laws.

89.    The obligation (the tax preparation and filing charges) and interest (the Refund Processing Service Fee) were absolutely repayable by Plaintiffs and the Subclasses.

90.    The transactions complained of herein were therefore usurious under California's usury laws.

91.    Defendant had a willful intent to enter into a usurious transaction.

92.    Defendant's arrangement with various banks, whereby the bank collected Refund Processing Service Fees from Plaintiffs and the Subclasses and delivered a substantial portion thereof to Defendant was essentially a sham arrangement with the aim of evading California's usury law. Defendant received usurious interest in violation of California's usury laws.

93.    Plaintiffs and the Usurious Interest Subclass are thus entitled to the amount of the usurious interest exacted by Defendant. Plaintiffs and the Usurious Interest and Penalty Subclass are thus entitled to the amount of the usurious interest exacted by Defendant as well as three times the usurious interest exacted by Defendant.

**D.      FOURTH CAUSE OF ACTION: VIOLATION OF CAL. BUS. & PROF. CODE §17200, ET SEQ. – UNLAWFUL, FRAUDULENT, AND UNFAIR BUSINESS ACTS AND PRACTICES**

94.     Plaintiffs incorporate by reference each of the foregoing allegations.

95.     Each of Defendant's violations of the California RAL Laws, TILA and Cal. Bus. & Prof. Code §17500, *et seq.*, and California's usury laws set forth above is an "unlawful" act providing the basis for a finding of liability under the "unlawful" prong of Cal. Bus & Prof. Code §17200, *et seq.*

96.     In addition, Defendant violated Cal. Bus & Prof. Code §17200, *et seq.* by not accurately disclosing the finance charge for each RPO purchased by a Class Member within the Class Period. For each RPO, Defendant failed to disclose any interest rate or finance charge. Each of these acts constitutes unfair, unlawful, and deceptive business act and practice in violation of Cal. Bus & Prof. Code §17200, *et seq.*

97.     Defendant's unfair, unlawful, and deceptive acts and practices alleged herein are objectively material to a reasonable consumer and have deceived and/or are likely to deceive Plaintiffs, the Class Members and other reasonable consumers.

98.     Plaintiffs and the Class Members have been damaged as a result of Defendant's unfair, unlawful and deceptive conduct alleged herein. They are entitled to injunctive relief and restitution, in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment in favor of themselves and the Class for the following:

A.     That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure; that Plaintiffs are proper class representatives; and that the best practicable notice of this action be given to members of the Class represented by Plaintiffs;

B.     That judgment be entered against Defendant and in favor of Plaintiffs and the Class on the Causes of Action in this Complaint, for statutory damages under California RAL laws;

C.    That judgment be entered against Defendant for injunctive and equitable relief, restitution, compensatory and treble damages in an amount to be determined at trial;

D.    That judgment be entered against Defendant finding that the conduct of Defendant is in violation of Cal. Bus & Prof. Code §§17200, *et seq.,* and §§17500, *et seq.,* and enjoining Defendant from continuing in such conduct.

E.    That judgment be entered against Defendant finding that the conduct of Defendant is in violation of Cal. Const., art. XV, § 1 and Cal. Civ. C. § 1916-1 *et seq.*, and that Plaintiffs and the Usurious Interest Subclass are thus entitled to the amount of the usurious interest exacted by Defendant and Plaintiffs and the Usurious Interest and Penalty Subclass are further entitled to thrice the amount of the usurious interest exacted by Defendant;

E.    That judgment be entered against Defendant imposing interest on damages;

F.    That judgment be entered against Defendant imposing litigation costs and attorneys' fees; and

G.    For all other and further relief as this Court may deem necessary and appropriate.

Plaintiffs demand a jury trial on all issues so triable.

DATED: January 13, 2012                    Respectfully Submitted,

                                            **CARNEY WILLIAMS BATES**
                                            **PULLIAM & BOWMAN, PLLC**

                                            By: _____
                                            Hank Bates (Ca. # 167688)
                                            hbates@carneywilliams.com
                                            11311 Arcade Drive, Suite 200
                                            Little Rock, Arkansas 72212
                                            Tel: 501-312-8500

                                            *and*

                                            **GOLOMB & HONIK, PC**
                                            Richard M. Golomb

- 21 -

rgolomb@golombhonik.com
Ruben Honik
rhonik@golombhonik.com
Kenneth J. Grunfeld
kgrunfeld@golombhonik.com
1515 Market Street, Suite 1100
Philadelphia, Pennsylvania 19102
Tel: 215-985-9177

*and*

**KU & MUSSMAN, PA**
Brian T. Ku
brian@kumussman.com
M. Ryan Casey
ryan@kumussman.com
12550 Biscayne Boulevard, Suite 406
Miami, Florida 33181
Tel: 305-891-1322

*and*

**MILSTEIN ADELMAN, LLP**
Gillian Wade (Ca. # 229124)
gwade@milsteinadelman.com
Isaac Miller (Ca. # 266459)
imiller@milsteinadelman.com
2800 Donald Douglas Loop North
Santa Monica, California 90405
Tel: 310-396-9600

*Attorneys for Plaintiffs Frederick
and Tasha Smith and the Class*

CLASS ACTION COMPLAINT