**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TASHA SMITH, et. al., ) | Case No.: 5:12-cv-00222 EJD |
| ) | |
| Plaintiffs, ) | **ORDER GRANTING MOTION TO** |
| ) | **DISMISS** |
| v. ) | |
| ) | **(Re: Docket Item No. 32)** |
| INTUIT INC., ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

Pending before the court is Defendant Intuit Inc.'s ("Intuit") motion to dismiss Plaintiff Tasha Smith and Plaintiff Frederick Smith's (collectively "Plaintiffs") Complaint. For the reasons discussed below, Intuit's motion is GRANTED with leave to amend.

## I. BACKGROUND

### A.  Factual Background

On March 19, 2012, Plaintiffs filed the Complaint alleging violations of California's refund anticipation loan ("RAL") statute, Cal. Bus. & Prof. Code § 22250 *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; California's usury laws, Cal. Const., art. XV, § 1 and Cal. Civ. Code. § 1961-1 *et. seq.*; and California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code § 17200 *et. seq.* In support of these claims, Plaintiffs allege the following factual allegations.

Intuit is the nation's leading provider of electronic tax preparation and filing services. Compl. ¶ 15. Among Intuit's primary revenue generating products is tax preparation software called "TurboTax." Id. TurboTax consists of two basic components: a user interface which prompts users to provide relevant information and an underlying tax engine which processes the information. Id. ¶ 10. Consumers access TurboTax either by purchasing the software and installing it on their computers or online via Intuit's website. Id. ¶ 11. Those who use TurboTax Online choose between two forms of payment: (1) paying immediately with a credit card or (2) deferring payment and deducting the cost from their federal income tax refund.

This latter payment option is called the Refund Processing Option ("RPO"). Id. ¶¶ 41-42. Plaintiffs utilized TurboTax Online's electronic tax preparation software for the 2008, 2009, and 2010 tax years. Id. at 48-55. In each instance they also chose the RPO as the method for paying their tax preparation fees and receiving their refunds. Id.

The RPO entails the establishment of a deposit account at a participating bank ("Deposit Account"). Id. ¶ 43. The Deposit Account is a non-interest-bearing account established for the sole purpose of receiving the customer's federal tax refund and dispersing those funds. Id. The bank, upon receiving the customer's tax refund, deducts the TurboTax fees and a $29.95 Refund Processing Service Fee ("RPO fee") for creating and administering the bank account and providing other bank services. Id. ¶ 45. The bank then disburses the balance of the refund to the customer via the customer's choice of a prepaid debit card or direct deposit to a checking or savings account. Id. With the RPO, Intuit defers payment for its TurboTax service for approximately eight to fifteen days (the time needed to receive the tax refund). Id. ¶ 46. The RPO's deferral of payment constitutes a loan, and Intuit provides no disclosure of the interest rate or finance charge for the RPO. Id.

### B. Procedural Background

The Complaint was filed on January 13, 2012. ECF No. 1. Plaintiffs alleged violations of the RAL statute, FAL, California Usury Law, and UCL. Id. On March 19, 2012, Intuit filed a motion to dismiss for failure to state a claim. ECF No. 32. On April 13, 2012, Plaintiff filed an

2

Case No.: 5:12-CV-00222 EJD
ORDER GRANTING MOTION TO DISMISS

opposition. ECF No. 50. On April 27, 2012, Defendant filed a reply. ECF No. 54. On May 29, 2012, the court took the motion under submission without oral argument. See Civil L.R. 7-1(b).

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. In deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F. 2d 1542, 1555 n. 19 (9th Cir. 1990). However, "material which is properly submitted as part of the complaint may be considered." Id.

In considering a motion pursuant to Rule 12(b)(6), the court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F. 2d 1242, 1245 (9th Cir. 1988). Even so, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

"[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. A complaint "does not need detailed factual allegations: but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Leave to amend should be freely granted "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F. 3d 1122, 1127 (9th Cir. 2000). Where amendment to the complaint would be futile, the court may order dismissal with prejudice. Dumas v. Kipp, 90 F. 3d 386, 393 (9th Cir. 1996).

3

Case No.: 5:12-CV-00222 EJD
ORDER GRANTING MOTION TO DISMISS

### III. Discussion

#### A.      Violation of the RAL Statute

Plaintiffs allege violations of three provisions of California's RAL statute — Cal. Bus. & Prof. Code § 22253.1(d)(1) & (2) and § 22253.1(f)(2). Compl. ¶¶ 71-74. Sections 22253.1(d)(1) and (2) require that, prior to a client's completion of an RAL application, a tax preparer that offers to facilitate an RAL shall provide to the client particular disclosures and information. Section 22253.1(f)(2) prohibits any tax preparer who facilitates an RAL from misrepresenting a material factor or condition of an RAL. Plaintiffs allege that the RPOs facilitated by Intuit are RALs and that, for each RPO, Intuit failed to disclose any interest rate or finance charge, failed to disclose the RPO as a finance charge, and failed to provide a clear, written disclosure containing the fee schedule. Compl. ¶¶ 70-71.

Intuit moves to dismiss the RAL claim, arguing the RPO is not a RAL or any other type of loan. Intuit argues the RPO merely deferred payment of tax preparation fees but did not make a loan to Plaintiffs. Plaintiffs argue that deferring payment of the preparation fee until Plaintiffs received their tax refund is a loan of the amount of the fees in anticipation of the refund.

A RAL is defined as "a loan, whether provided by the tax preparer or another entity, such as a financial institution, in anticipation of, and whose payment is secured by, a client's federal or state income tax refund or by both." Cal. Bus. & Prof. Code § 22251(f). A "loan" is "a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed." Cal. Civ. Code § 1912; Sw. Concrete Prods. v. Gosh Constr. Corp., 798 P. 2d 1247, 1249 (Cal. 1990) ("A loan of money is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount.").

However, "[t]he manual passage of money loaned into the hands of the borrower is not the essence of a loan." Great American Ins. Co. v. National Health Services, 62 Cal. App. 3d 785, 791 (1976). The court "must look to the substance of the transaction and not to its form." Id. For example, in Great American, a California Court of Appeals held that an action by a surety to recover on an indemnification agreement for payment of its bond was an action based on a loan. Specifically, the court held that the substance of the bond transaction was "strikingly similar to the

4
Case No.: 5:12-CV-00222 EJD
ORDER GRANTING MOTION TO DISMISS

commonplace loan transaction" because the plaintiff had "agreed to satisfy an obligation of defendant if the latter was unable to do so, upon the express understanding that in that event it would be reimbursed by defendant and the indemnitors." Id. at 792. Thus, the remedies available to plaintiff should not be different than "if, instead of posting a bond, it had delivered to [defendants] the amount of the bond so that they could have made a personal undertaking." Id.

In contrast, a delay in receiving payment for goods or services does not constitute a loan. See, e.g., People v. Thrasher, 98 Cal. Rptr. 3d 693, 697. (Ct. App. 2009). "In any economic transaction where payment is not simultaneous with delivery of goods or services, the supplier of the goods or service does not have use of the money until payment is received," but "that delay in receiving payment does not make the supplier a lender to the purchaser by any common understanding of the word 'loan.'" Id.

Here, the RPO as described in the Complaint is missing the first step of the definition of a loan: Intuit did not give Plaintiffs money, or satisfy an obligation on behalf of Plaintiffs. Instead, the RPO allowed Plaintiffs to delay payment for use of the TurboTax software until after Plaintiffs receive their refund from the IRS. Intuit did not provide any amount of money to Plaintiffs; the only money Plaintiffs received was from the IRS in the form of their refund. Thus, the RPO is not a loan because the nature of the transaction does not deliver a sum of money to another or require that money be returned at a future time. The fact that Intuit allows for a delay in receiving payment for use of its tax preparation software is not sufficient to demonstrate that Intuit plausibly made a loan to its customer in the amount of the payment owed.

In support of Plaintiffs' argument that the RPO is an RAL, Plaintiffs rely on California v. JTH Tax, Inc., No. CGC-07-460778, slip op. (Cal. Super. Ct. Jun. 15, 2009).[1] The defendant in JTH Tax offered two separate services: RALs (actual loans of money in anticipation of a refund) and electronic refund checks ("ERCs"). Id. at 2-4. The court defined them differently and analyzed them separately. According to the Superior Court, "[an] RAL is a short-term loan secured by a

---
[1] Intuit argues that JTH Tax is uncitable pursuant to Cal. Rule of Court 8.1115. Rule 8.1115, however, pertains to an opinion of a California Court of Appeal or superior court appellate division. Intuit has not cited any authority indicating that this rule prohibits citations to unpublished California Superior Court opinions. Thus, the court considers Plaintiff's arguments relying on JTH Tax.

5
Case No.: 5:12-CV-00222 EJD
ORDER GRANTING MOTION TO DISMISS

customer's anticipated refund and issued by a third-party bank. Id. at 2. The loan amount is based on the anticipated refund minus all fees, including a finance charge, the tax preparation fees, and an 'account' or 'handling' fee, and is usually disbursed in one to two days." Id. With an ERC, by contrast, "the bank sets up a temporary 'account' to receive the customer's refund. After the refund is disbursed by the IRS, the bank deducts the tax return preparation fees, the 'account' or 'handling' fee, and any other applicable charges, and pays the remainder to the customer (typically) in the form of a personal check . . . ." Id. at 3 (internal citations omitted).

The RPOs at issue in this case are similar to the JTH Tax court's description of the ERC, not the description of the RAL. Because the court in JTH Tax did not hold that an ERC is a loan or a RAL, Plaintiffs have failed to show how JTH Tax supports their argument that Intuit's RPOs are RALs. Thus, JTH Tax does not contradict the court's finding that the facts alleged in Plaintiffs' Complaint do not state a RAL claim.

Thus, Plaintiffs did not plead facts sufficient to state a plausible claim that the RPO is a RAL, or any type of loan for that matter. Intuit's motion to dismiss Plaintiffs' claim for violations of the RAL statute therefore is GRANTED with leave to amend.

**B. Violation of California's Usury Law**

Plaintiffs allege Intuit violated California's usury laws. Under certain circumstances, the California Constitution and usury statute limit the amount of interest an entity may charge on a "loan or forbearance of any money, goods or things in action." Cal. Const. art. XV, § 1; see Cal. Civ. Code § 1916.1 et seq. Plaintiff alleges that the $29.95 fee for using the RPO is usurious interest. Intuit argues that Plaintiffs have failed to state a claim for usury because Plaintiffs have not pleaded facts showing the RPO is a loan or forbearance, instead of a manner of paying for Intuit's sale of a license to use tax-preparation software.

"Without a loan or forbearance, usury cannot exist." Ghirardo v. Antonioli, 883 P. 2d 960, 967 (Cal. 1994). As discussed above, because Plaintiffs have not alleged that Intuit delivered money to Plaintiffs or to another on Plaintiffs' behalf, Plaintiffs have not pleaded facts sufficient to show the RPO is a loan. The court therefore must determine whether Plaintiffs have pleaded facts showing the RPO is a forbearance.

A forbearance "is the giving of further time for the payment of a debt or an agreement not to insist upon payment at the due date." O'Connor v. Televideo System, Inc., 267 Cal. Rptr. 237, 239 (Ct. App. 1990). However, "both a loan of money and a forbearance are to be distinguished from a sale which is the 'transfer of property in a thing for a price in money." See Southwest Concrete Products. v. Gosh Construction Corp., 798 P. 2d 1247, 1249 (Cal. 1990) (citing O'Connor, 267 Cal. Rptr. at 239). "In determining whether a transaction constitutes a loan or forbearance, we look to the substance rather than the form of the transaction. 'In all such cases the issue is whether or not the bargain of the parties, assessed in light of all the circumstances and with a view to substance rather than form, has as its true object the hire of money at an excessive rate of interest.'" Id. at 1249-50 (citing Boerner v. Colwell Co., 21 Cal. 3d 37, 44 (1978).

One exception to the usury law is the "time-price" doctrine. Under this doctrine, a sale of goods or services is not a forbearance subject to the usury laws, regardless of whether payment is deferred in exchange for a higher price or additional fees. A sale in which "the seller finances the purchase of property by extending payments over time and charging a higher price for carrying the financing. . . . is not subject to the usury law because it does not involve a loan or forbearance." Id. at 1250. "It is manifest that any person owning property may sell it at such price and on such terms as to time and mode of payment as he may see fit, such a sale, if bona fide, cannot be usurious . . ." Verbeck v. Clymer, 261 P. 1017, 1019 (Cal. 1927). "[T]he owner of property . . . has a perfect right to name the price on which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or at a much higher price on credit, and a credit sale will not constitute usury however great the difference between the two prices. Id. at 1019.

Here, the Complaint alleges that the RPO fee is charged "in exchange for extending the time for Plaintiffs . . . to pay an obligation due to Defendant (the charges associated with Defendant's electronic tax preparation and filing services)." Compl. ¶ 85 (emphasis added). Plaintiffs do not dispute that Intuit sold Plaintiffs a license to use its TurboTax software. As the seller, Intuit has the right to sell its license on its own terms, including charging a fee for later payment.

7
Case No.: 5:12-CV-00222 EJD
ORDER GRANTING MOTION TO DISMISS

Plaintiffs argue that this time-price exception applies only to contracts providing for late charges or installment payments over a period of time, but not to a contract providing for a single payment at a later time such as the RPO. Plaintiffs, however, have not cited any authority in support of their argument that whether the deferred payments were made in installations or at one time is material in determining whether a sale, as opposed to a loan, has taken place. Rather, it is not material whether the agreement for the purchase price in the future specifies the whole sum then to be paid or names a particular sum as principal and interest that it will draw. Verbeck, 261 P. at 1019.

Because the Complaint pleads facts demonstrating that the fees Plaintiffs owed to Intuit were for the sale of goods or services, the Complaint has failed to state a plausible claim that Intuit granted a forbearance by offering the RPO to collect those fees at a later time for an additional fee. Because the Complaint has not alleged facts demonstrating Inuit's RPO fee was charged in connection with a loan or forbearance, it has not sufficiently pleaded that the RPO fee is usurious interest. Thus, Intuit's motion to dismiss the usury claims is GRANTED with leave to amend.

### C. Violation of UCL and FAL

Plaintiffs' remaining claims concern alleged violations of the UCL and FAL. Under the FAL, it is unlawful for anyone to make false or misleading representations in connection with the sale of services. Cal. Bus. & Prof. Code § 17500. California's UCL prohibits unfair, unlawful, and fraudulent business practices. Id. § 17200. Plaintiffs' claims are based upon their allegations that Intuit violated California's RAL statute, California usury laws, and the allegation that Intuit misled customers by neglecting to label the RPO fee a "finance charge" under TILA. See Compl. ¶¶ 79, 80, 95, 96.

Intuit moves to dismiss Plaintiffs' FAL and UCL because Plaintiffs have failed to plead facts showing they have statutory standing to bring these claims. To have statutory standing, plaintiffs are required to show an economic injury that was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim. Kwikset Corp. v. Superior Court, 246 P.3d 877, 885 (Cal. 2011) (emphasis in original). "For purposes of pleading a fraudulent omissions claim under the UCL . . . a plaintiff satisfies the 'as a result of' requirement by pleading

8
Case No.: 5:12-CV-00222 EJD
ORDER GRANTING MOTION TO DISMISS

that he would have behaved differently if he had been aware of the information and the undisclosed information would have been important to reasonable consumers." Shin v. BMW of North America, No. 09-00398 AHM (AJWx), 2009 WL 2163509, at *3 (C.D. Cal. July 16, 2009).

Although Plaintiffs allege they paid exorbitant finance fees (see, e.g., Compl. ¶ 55), Plaintiffs do not allege they would not have paid those finance charges if they had been properly disclosed as such rather than being labeled as an RPO fee. Specifically, Plaintiffs do not allege that they "paid more" for the RPO than they would have if the RPO fee were labeled as a finance charge. Peterson v. Cellco Partnership, 80 Cal. Rptr. 3d 316, 322 (Ct. App. 2008). Nor do they allege that they were "deceived . . . into spending money to purchase" the RPO that they "would not have purchased it otherwise." Kwikset, 246 P.3d at 881. The Complaint does not contain a single allegation that Plaintiffs "could have bought the same" service "for a lower price," Peterson, 80 Cal. Rptr. 3d at 322, or that Plaintiffs were uninformed of the actual cost of the RPO, id. Thus, Plaintiffs have failed to plead economic injury that was the result of the unfair business practice or false advertising that is the gravamen of their claims.[2]

Because the Complaint fails to plead facts demonstrating that Plaintiffs standing under the FAL and UCL, Intuit's motion to dismiss Plaintiffs' UCL and FAL claims is GRANTED with leave to amend.

### IV. CONCLUSION

For the reasons discussed above, Intuit's motion to dismiss Plaintiffs' Complaint is GRANTED with leave to amend. Any amended complaint must be filed no later than 30 day of the date of this Order.

IT IS SO ORDERED

Dated: September 10, 2012

_____
EDWARD J. DAVILA
United States District Judge

---

[2] Because Plaintiffs have failed to demonstrate standing under the UCL and FAL, the court does not address the merits of those claims at this time.

9
Case No.: 5:12-CV-00222 EJD
ORDER GRANTING MOTION TO DISMISS