**CARNEY BATES & PULLIAM, PLLC**
Hank Bates (Ca. # 167688)
11311 Arcade Drive, Suite 200
Little Rock, Arkansas 72212
Tel: 501-312-8500

**MILSTEIN ADELMAN, LLP**
Gillian Wade (Ca. # 229124)
Isaac Miller (Ca. # 266459)
2800 Donald Douglas Loop North
Santa Monica, California 90405
Tel: 310-396-9600

**GOLOMB & HONIK, PC**
Richard M. Golomb
Ruben Honik
Kenneth J. Grunfeld
1515 Market Street, Suite 1100
Philadelphia, Pennsylvania 19102
Tel: 215-985-9177

**KU & MUSSMAN, PA**
Brian T. Ku
M. Ryan Casey
12550 Biscayne Boulevard, Suite 406
Miami, Florida 33181
Tel: 305-891-1322

Attorneys for Plaintiffs Tasha Smith
and Fredierick Smith and the
Proposed Class

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| TASHA SMITH and FREDIERICK SMITH, individually and on behalf of all others similarly situated | CASE NO.: **5:12-cv-00222-EJD** |
| | **PLAINTIFFS' NOTICE OF UNOPPOSED CORRECTED MOTION AND PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Plaintiffs, | |
| vs. | |
| INTUIT, INC., a Delaware corp., | |
| Defendant. | Judge: Hon. Edward J. Davila |
| | Place: Courtroom 4, 5th Floor |
| | Date: May 24, 2013 |
| | Time: 9:00 a.m. |

**TO THIS COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Please take notice that on the date, at the time, and in the above-indicated department of the above-entitled Court, Plaintiffs Tasha Smith and Frederick Smith, by and through their counsel, and pursuant to the Settlement Agreement dated May 9, 2013 (the "Agreement") and the exhibits attached thereto, will hereby move this Court for preliminary approval of the proposed settlement (the "Settlement") of this case. In particular, Plaintiffs will respectfully request this Court to enter an order (i) granting preliminary approval of the proposed Settlement; (ii) conditionally certifying the proposed settlement class (the "Class"); (iii) directing that notice of the proposed Settlement be given to members of the Class in the proposed form and manner; and (iv) scheduling a final approval hearing before the Court to determine whether the proposed Settlement should be finally approved.

This Corrected Motion is unopposed by Defendant. The only difference between this Corrected Motion and the original motion, filed April 13, 2013, is the effective date of the Settlement Agreement. There is no substantive change to the Settlement Agreement or the pleadings in support of the motion seeking preliminary approval of the class action settlement. Notwithstanding the uncontested nature of this Motion, Plaintiffs have set the Motion for a hearing date in accordance with the Local Rules. However, the parties believe that this Motion can be decided without a hearing and request that this Motion be decided without a hearing on the papers submitted contemporaneously herewith.[1]

Dated: May 10, 2013

Respectfully Submitted,
**MILSTEIN ADELMAN, LLP**

---

[1] The Agreement and the exhibits attached thereto and a Memorandum of Points and Authorities in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement are being contemporaneously filed herewith.

By: _/s/ Gillian Wade_____
Gillian Wade (Ca. # 229124)
gwade@milsteinadelman.com
Isaac Miller (Ca. # 266459)
imiller@milsteinadelman.com
2800 Donald Douglas Loop North
Santa Monica, California 90405
Tel: 310-396-9600

*and*

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates (Ca. # 167688)
hbates@cbplaw.com
11311 Arcade Drive, Suite 200
Little Rock, Arkansas 72212
Tel: 501-312-8500

*and*

**GOLOMB & HONIK, PC**
Richard M. Golomb
rgolomb@golombhonik.com
Ruben Honik
rhonik@golombhonik.com
Kenneth J. Grunfeld
kgrunfeld@golombhonik.com
1515 Market Street, Suite 1100
Philadelphia, Pennsylvania 19102
Tel: 215-985-9177

*and*

**KU & MUSSMAN, PA**
Brian T. Ku
brian@kumussman.com
M. Ryan Casey
ryan@kumussman.com
12550 Biscayne Boulevard, Suite 406
Miami, Florida 33181
Tel: 305-891-1322

*Attorneys for Plaintiffs Frederick and Tasha Smith and the Class*

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................... 1

II.   OVERVIEW OF THE LITIGATION ............................................ 1

III.  THE PROPOSED SETTLEMENT AND SETTLEMENT
      PROCEDURE ............................................................................... 3

      A.   Settlement Terms ................................................................ 3

      B.   Proposed Class Definition.................................................. 4

      C.   Proposed Class Action Settlement Procedure..................... 5

IV.   ARGUMENT ................................................................................ 6

      A.   Applicable Legal Standards ................................................ 6

      B.   The Proposed Settlement Warrants Preliminary Approval .................. 8

           1.   The Settlement Falls Within the Range of Possible
                Approval ...................................................................... 8

           2.   There is No Reason to Doubt the Fairness of the
                Settlement .................................................................. 10

      C.   Conditional Certification of the Class is Appropriate ....................... 11

           1.   The Class is Sufficiently Numerous ......................... 12

           2.   Common Questions of Law or Fact Exist .................. 13

           3.   Class Representatives' Claims are Typical of Those of the
                Class........................................................................... 14

           4.   Class Representatives Will Adequately Protect the
                Interests of the Class................................................. 15

           5.   The Requirements of Rule 23(b) Are Satisfied ....................... 16

a.     *Common Questions of Law or Fact Predominate*.......... 16

b.     *A Class Action Is the Superior Method of Adjudicating This Case* ................................................... 17

D.     The Proposed Notice Program Is Adequate........................................ 18

V.     CONCLUSION ................................................................................ 19

PLAINTIFFS' UNOPPOSED CORRECTED MOTION FOR PRELIMINARY APPROVAL

# **TABLE OF AUTHORITIES**

**Cases**                                                                **Page(s)**

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ................................................................... 15. 16, 17

*Berlowitz ex rel. Berlowitz v. Nob Hill Masonic Mgmt.,*
    No. C-96-01241 MHP, 1996 U.S. Dist. LEXIS 22599 (N.D. Cal. 1996)......... 12

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ................................................................... 9

*DeBoer v. Mellon Mortgage. Co.,*
    64 F.3d 1171 (8th Cir. 1995) ................................................................... 14

*Evans v. Am. Credit Sys.,*
    222 F.R.D. 388 (D. Neb. 2004) ................................................................... 17

*Franklin v. Kaypro Corp.,*
    884 F.2d 1222 (9th Cir. 1989) ................................................................... 8

*Hassine v. Jeffes,*
    846 F.2d 169 (3d Cir. 1988) ................................................................... 15

*In re Am. Med. Sys.,*
    75 F.3d 1069 (6th Cir. 1996) ................................................................... 14

*In re Apple Computer Sec. Litig.,*
    No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991)............ 10

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001) ................................................................... 15

*In re Med. Ex-Ray Film Antitrust Litig.,*
    CV-93-5904, 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998).............. 9

*In re Michael Milken & Assocs. Sec. Litig.,*
    150 F.R.D. 46 (S.D.N.Y. 1993)......................................................... 10

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) .................................................................. 8

*In re Potash Antitrust Litig.*,
    159 F.R.D. 682 (D. Minn. 1995) ............................................................... 17

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................... 7

*In re M.L. Stern Overtime Litig.*,
    Case No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650
    (S.D. Cal. April 13, 2009) ........................................................................ 7

*In re Traffic Executive Ass'n-E. R.R.s*,
    627 F.2d 631 (2d Cir. 1980) ..................................................................... 8

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ..................................................................... 14

*In re Warner Comm. Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985),
    *aff'd,* 798 F.2d 35 (2d Cir. 1986) ............................................................. 10

*Jerry Enters. v. Allied Bev. Group, L.L.C.*,
    178 F.R.D. 437 (D.N.J. 1998) ................................................................... 14

*McAnaney v. Astoria Fin. Corp.*,
    No. 04-CV-1101, 2006 WL 2689621 (E.D.N.Y. Sept. 19, 2006) ..................... 14

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) ................................................................... 10

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ..................................................................... 14

*Seidman v. Am. Mobile Sys.*,
    157 F.R.D. 354 (E.D. Pa. 1994) ............................................................... 16

*Strougo v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..................................................... 10

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ............................................................... 8

*Vandervort v. Balboa Capital Corp.,*
    287 F.R.D. 554 (C.D. Cal. 2012) ....................................................... 13

*Vinh Nguyen v. Radient Pharmaceuticals Corp.,*
    287 F.R.D. 563 (C.D. Cal. 2012) ....................................................... 12

*Weeks v. Kellogg Co.,*
    Case No. CV 09-08102 (MMM) (RZx), 2011 U.S. Dist. LEXIS
    155472 (C.D. Cal. Nov. 23, 2011) ..................................................... 11

*West Virginia v. Chas. Pfizer & Co.,*
    314 F. Supp. 710 (S.D.N.Y. 1970),
    *aff'd,* 440 F.2d 1079 (2d Cir. 1971) .............................................. 9, 10

*Williams v. First Nat'l Bank,*
    216 U.S. 582 (1910) ........................................................................... 8

## Statutes and Constitutional Provisions

15 U.S.C. § 1601, *et seq.* ................................................................ 2

Cal. Bus. & Prof. Code § 17200 ...........................................2, 13, 14, 17

Cal. Bus. & Prof. Code § 17500 ...............................................2, 14, 17

Cal. Bus. & Prof. Code § 22250 ....................................................... 2

Cal. Civ. Code § 1916.1 ................................................................... 2

Cal. Const. art. XV, § 1 ................................................................... 2

## Other Authorities

A. Conte & H. B. Newberg, *Newberg on Class Actions* (4th ed. 2002) ............5, 6, 7

*Manual for Complex Litigation* (3d ed. 1975)..........................................................8

*Manual for Complex Litigation* (1977) ...................................................................8

*Manual for Complex Litigation Fourth* (2004) .......................................................7

## Rules

Federal Rule of Civil Procedure 23 ................................................................*passim*

PLAINTIFFS' UNOPPOSED CORRECTED MOTION FOR PRELIMINARY APPROVAL

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Tasha Smith and Frederick Smith ("Plaintiffs") respectfully submit this memorandum of points and authorities in support of their motion for an order preliminarily approving the proposed settlement (the "Settlement") reflected in the Settlement Agreement (the "Agreement" or "Settlement Agreement"), which is being contemporaneously filed herewith. *See* Declaration of Hank Bates ("Bates Decl."), Ex. 1.

## I.   **INTRODUCTION**

Plaintiffs have reached a Settlement with Intuit, Inc. ("Intuit" or "Defendant") in the above-referenced class action (the "Action" or the "Litigation") and now seek an Order from the Court: (1) granting preliminary approval of the Settlement; (2) conditionally certifying the proposed settlement class (the "Class"), (3) directing that notice of the Settlement be given to the Class in the proposed form and manner, and (4) scheduling a final approval hearing before the Court to determine whether the proposed Settlement should be finally approved. As detailed herein and in the Agreement, the Settlement provides significant and material benefits to the Class and was reached only after rigorous examination of the facts and the law, as well as intensive arm's length settlement negotiations between experienced and informed counsel on both sides, with the assistance of a highly experienced and respected mediator.

## II.   **OVERVIEW OF THE LITIGATION**

On January 13, 2012, the following actions were filed against Intuit:

        1.   *Smith v. Intuit* (Case No. 5:12-cv-00222), currently pending in the United States District Court for the District of Northern California (the "*Smith* Action"); and

2.     *Quildon v. Intuit* (Case No. 112-cv-216744), currently pending in the Superior Court of California (the "*Quildon* Action").

Each of the cases set forth above (collectively referred to as the "Related Actions") was predicated on similar allegations, including allegations that Intuit's conduct and omissions relating to the Refund Processing Service through TurboTax online violates California's refund anticipation loan statute (Cal. Bus. & Prof. Code § 22250, *et seq.*), usury laws (Cal. Const. art. XV, § 1; Cal. Civ. Code § 1916.1, *et seq.*); Unfair Competition Law (Cal. Bus. & Prof. Code § 17200); False Advertising Law (Cal. Bus. & Prof. Code § 17500); and the federal Truth in Lending Act ("TILA") (15 U.S.C. § 1601 *et seq.*).

On March 19, 2012, Defendant moved to dismiss the *Smith* Action. Plaintiffs filed a response in opposition to Defendant's motion on April 13, 2012. Defendant filed a reply brief on April 27, 2012.

On September 10, 2012, this Court entered an order in the *Smith* Action granting Defendant's motion to dismiss, while, at the same time, granting Plaintiffs leave to amend. In accord with the Court's order, Plaintiffs filed an Amended Class Action Complaint on October 9, 2012, which was superseded by Plaintiffs' Second Amended Class Action Complaint on January 3, 2013.

Contemporaneously with the proceedings in the *Smith* Action, Defendant removed the *Quildon* Action to federal court. Plaintiffs, in turn, moved to remand the *Quildon* Action back to the Superior Court of California for Santa Clara County. While Plaintiffs' motion for remand was still pending in the *Quildon* Action, Defendant filed a motion to dismiss that action with this Court. On April 5, 2012, this Court entered an order referring the Related Actions to ADR. Shortly thereafter, Defendant, on the one hand, filed a response in opposition to Plaintiffs' motion to remand, while Plaintiffs, on the other hand, filed a response in opposition to Defendant's motion to dismiss. Plaintiffs filed a reply brief in further support of

remand on April 26, 2012. A day later, Defendant filed a reply brief in further support of dismissal. On March 18, 2012, this Court entered an order granting Plaintiffs' motion to remand and denying Defendant's motion to dismiss as moot.[1]

In accord with the Court's order referring the Related Actions to ADR, the parties participated in mediation before the highly experienced and respected mediator Randall W. Wulff, of Dispute Resolution. With the assistance of this neutral mediator, the parties were ultimately able to negotiate an agreement in principle to settle all claims alleged against Intuit in the Related Actions. Notice of the settlement was given to the Court on January 2, 2013, and this Court set a hearing for consideration of a motion for preliminary approval for May 24, 2013.

On May 9, 2013, the Parties executed a comprehensive settlement agreement, which sets forth the terms and conditions of the Settlement and the parties' respective rights and obligations thereunder. *See generally* Settlement Agreement, and the exhibits annexed thereto, being filed contemporaneously herewith.

## III. THE PROPOSED SETTLEMENT AND SETTLEMENT PROCEDURE

### A. Settlement Terms

In settlement of all claims in the Litigation, the Defendant has agreed to create a $6,550,000.00 fund to be divided, after deduction of court-awarded attorneys' fees and expenses, and notice and administration costs, among Settlement Class Members with Approved Claims, as defined in the Agreement. *See* Settlement Agreement, ¶ 44. In exchange for the consideration from the Defendant, the Litigation will be dismissed with prejudice upon final approval of

---

[1] On August 17, 2012, the Superior Court stayed the *Quildon* Action in its entirety pending the outcome of the *Smith* Action.

the Settlement, and Plaintiffs and Class Members shall discharge Defendant of all "Released Claims." *Id*. at ¶¶ 34, 47-53.

## B. **Proposed Class Definition**

For the purpose of implementing the terms of the Agreement, Plaintiffs, consistent with paragraphs 40 and 41 of the Settlement Agreement, request that this Court certify the following class pursuant to Rule 23(b)(3), as follows:

> All Intuit customers in the United States who used Intuit's TurboTax online and utilized the Refund Processing Service from the time period from and including January 12, 2008, through the date of the order granting preliminary approval of the settlement. Excluded from the Class are all persons who elect to exclude themselves from the Class, Intuit, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

In addition, Plaintiffs request that the Court appoint Tasha Smith, Frediereck Smith and Sache Quildon as Class Representatives. Tasha Smith and Frediereck Smith are the individuals who filed this action. Sache Quildon is the named Plaintiff in the *Quildon* Action, but she is also a signatory to the Settlement Agreement and a class member in the class referenced in the paragraph above. The Parties have agreed that, subject to this Court's approval, she should be considered a class representative in this case. *See* Settlement Agreement, ¶¶ 30, 72. It is further contemplated under the Settlement Agreement that Ms. Quildon will seek dismissal of the *Quildon* Action. *See id*., ¶ 72.

Pursuant to Rule 23(b)(3) and the Agreement, any individual meeting the definition of Class Member may, through a timely filed Opt-Out request, opt out of the Class and the provisions of the Settlement Agreement, and, in doing so, shall not be held to the terms of the release contained in the Settlement Agreement. *See* Settlement Agreement, ¶¶ 59-60; *see also* Exhibit 1 of the Settlement Agreement (Long Form Notice), p. 7.

## C.     Proposed Class Action Settlement Procedure

Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements.  The Rule 23(e) settlement approval procedure describes three distinct steps:

1.     Conditional certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.     Dissemination of notice of settlement to all affected Class members; and

3.     A formal fairness hearing, or final settlement approval hearing, at which Class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement is presented.

This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See* 4 Newberg on Class Actions § 11.22, *et seq*.

With this motion, Plaintiffs request that the Court grant conditional certification of a settlement class, preliminarily approve the proposed Settlement, and approve the form of notice contemplated under the Settlement Agreement. The purpose of the Court's preliminary evaluation of the proposed Settlement Agreement is to determine whether it is within "the range of reasonableness" and thus whether notice to the Class of the terms and conditions of the Settlement Agreement, and the scheduling of a formal fairness or final approval hearing, are worthwhile.  4 Newberg § 11.25.

The parties further request that the Court conditionally certify the proposed Class at this time, appoint Plaintiffs' counsel as Class Counsel for the Settlement

Class, and appoint Tasha Smith, Frediereck Smith and Sache Quildon as adequate Class Representatives. The additional rulings sought on this motion — approving the form, content and distribution of Class Notice, and scheduling a final approval hearing — facilitate the settlement approval process and are also typically made at the preliminary approval stage. 4 Newberg § 11:24 *et seq*.

Consistent with the provisions of the Settlement Agreement, the parties propose the following deadlines for the settlement procedure:

- Preliminary approval hearing: May 24, 2013 (as previously set by the Court);
- Deadline for Intuit to create Settlement Fund: within 30 days after preliminary approval order;
- Deadline for Intuit to provide the List of Potential Class Members to the Settlement Administrator: within 30 days after preliminary approval order;
- Deadline for Notice: 60 days after preliminary approval order;
- Deadline for Objections: 60 days after notice deadline;
- Deadline for Motion for final approval and fee application – 35 days before the final approval hearing;
- Deadline for Objections – 30 days before the final approval hearing; and
- Deadline for Claims – 30 days after final approval hearing.

The parties also propose that the Court schedule the final approval hearing approximately 125 days after the preliminary approval hearing or shortly thereafter consistent with the availability of the Court's schedule.

## IV.  ARGUMENT

### A.  Applicable Legal Standards

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. The procedure for judicial approval of a proposed class action settlement is well established:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation . . . If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b) . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing.

*In re M.L. Stern Overtime Litig.*, Case No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650, at *8-9 (S.D. Cal. April 13, 2009) (quoting Manual for Complex Litigation Fourth § 21.632 (2004)). Importantly, "[b]ecause class members will subsequently receive notice and have an opportunity to be heard on the settlement, [a] Court need not review the settlement in detail at [the preliminary approval stage]; instead, preliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'" *Id.* at *9-10 (quoting A. Conte & H. B. Newberg, *Newberg on Class Actions*, § 11.25 (4th ed. 2002)); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (citation omitted).

At this juncture, Plaintiffs request only that the Court grant preliminary approval of the proposed Settlement and provide for notice to the Class. "Where

the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Here, preliminary approval should be granted because the proposed Settlement and the proposed form and program of providing notice satisfy the requirements for preliminary approval in all respects.

**B.      The Proposed Settlement Warrants Preliminary Approval**

As a matter of public policy, settlement is a strongly favored mechanism for resolving disputed claims. *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910). This "overriding public interest in settling and quieting litigation . . . is particularly true in class action suits." *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (quoting *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)). Turning to the specifics of this Action, preliminary approval of the Settlement should be granted because the Settlement is within the range of possible approval and there is no reason to doubt its fairness. To grant preliminary approval and justify providing notice to the Class, the Court need only conclude that the proposed Settlement is "within the range of possible approval" and "does not disclose grounds to doubt its fairness." *See Manual for Complex Litigation* §30.41, at 237 (3d ed. 1975). Such a finding "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n-E. R.R.s,* 627 F.2d 631, 634 (2d Cir. 1980) (citing *Manual for Complex Litig.,* § 1.46 at 55 n.10 (1977)). Here, there is sufficient "probable cause" to warrant preliminarily approving the proposed Settlement and providing notice to the Class.

**1.      The Settlement Falls Within the Range of Possible Approval**

The value of the proposed Settlement falls well within the range of a reasonable settlement. The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. *In re Med. Ex-Ray Film Antitrust Litig.*, CV-93-5904, 1998 U.S. Dist. LEXIS 14888, at *15 (E.D.N.Y. Aug. 7, 1998); *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.") As such,

> [t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. . . . In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974) (citations omitted).

Here, while Plaintiffs have calculated the maximum value of their claims to be a figure larger than the settlement amount, when this amount is discounted by the identifiable risks, experience dictates that the interests of the Class are better served by the proposed Settlement. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("In considering the proposed compromise, it seems also to be of importance that (if approved) the substantial amounts of money are available for class members now, and not at some distant time in the future. The nature of these actions is such that a final judgment, assuming it to be favorable, could only be obtained after years of expensive litigation. It has been held proper to take the bird in hand instead of a

prospective flock in the bush.") (citations omitted); *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is no guarantee of ultimate success"). More particularly, the outcome of continued litigation and a trial against the Defendant is uncertain. The Defendant has vigorously denied Plaintiffs' allegations of wrongdoing. As such, multiple legal issues remain to be determined by the court and a jury would have to evaluate a host of conflicting evidence. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2003) (citing *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986)).

Moreover, even if Plaintiffs were to prevail through continued litigation and at trial, they still face significant risks. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial with regard to the corporate defendant. *Id*.

Clearly, in light of the foregoing, the benefits conferred by the Settlement are within the range of reasonableness. Thus, preliminary approval of the proposed Settlement should be granted.

### 2. <u>There is No Reason to Doubt the Fairness of the Settlement</u>

Because the Settlement in this Litigation is the product of extensive arms' length negotiations, there is no reason to doubt its fairness. A proposed settlement that is the result of arm's length negotiations by class counsel is presumptively fair

and reasonable. *See Weeks v. Kellogg Co.*, Case No. CV 09-08102 (MMM) (RZx), 2011 U.S. Dist. LEXIS 155472, at *44 (C.D. Cal. Nov. 23, 2011). Here, the Settlement was reached only after Class Counsel conducted an extensive factual investigation into the Defendant's alleged misconduct and thoroughly researched the law pertinent to the Class's claims and the Defendant's defenses. Thus, Class Counsel had a wealth of information at their disposal before entering into settlement negotiations. Consequently, Class Counsel were able to adequately assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of settlement against the risks of further litigation.

Equally important, counsel for the Defendant vigorously defended their client's position and demonstrated their commitment to litigate this Action to its conclusion. Hence, the proposed Settlement represents concessions by both parties after hard-fought negotiations conducted by experienced counsel on both sides who were thoroughly familiar with the factual and legal issues. In these circumstances, there can be no question that the proposed Settlement is not the product of collusion.

What is more, the participation of an experienced, neutral mediator in the settlement process further underscores the fact that the proposed Settlement is not the product of collusion. Further, the attorneys' fees to be sought (no more than 25% of the Settlement Fund; *see* Settlement Agreement ¶ 79) fall within the range of fees routinely awarded to class counsel in class actions. Consequently, there is no reason to doubt the fairness of the Settlement.

### C. <u>Conditional Certification of the Class is Appropriate</u>

In order to proceed with the preliminary approval process, it is necessary for the Court to preliminarily certify a class for purposes of the Settlement. Federal Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and the action qualifies under one of the

subdivisions of Rule 23(b).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, Rule 23(b) provides, in relevant part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:

> (3) the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As set forth below, all of the requirements of Rule 23 are met in this case, justifying preliminary certification of the proposed Class for settlement purposes.

### 1. The Class is Sufficiently Numerous

"No arbitrary rules regarding the necessary size of classes have been established." *Berlowitz ex rel. Berlowitz v. Nob Hill Masonic Mgmt.*, No. C-96-01241 MHP, 1996 U.S. Dist. LEXIS 22599, at *6 (N.D. Cal. 1996); *see also Seidman v. Am. Mobile Sys.,* 157 F.R.D. 354, 359 (E.D. Pa. 1994) ("There is no magic minimum number necessary to satisfy the Rule 23(a)(1) numerosity requirement."). Still, numerosity is generally presumed when the potential number of plaintiffs exceeds 40. *Vinh Nguyen v. Radient Pharmaceuticals Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012) ("There is no specific minimum number of

plaintiffs asserted to obtain class certification, but a proposed class of at least forty members presumptively satisfies the numerosity requirement.")

Here, the Class consists of the following: all Intuit customers in the United States who used Intuit's TurboTax online and utilized the Refund Processing Service from the time period from and including January 12, 2008, through the date of the order granting preliminary approval of the settlement (the "Settlement Class Period").[2] Here, the Settlement Class numbers in the millions. Accordingly, the class is sufficiently numerous to satisfy Rule 23(a)(1).

## 2. <u>Common Questions of Law or Fact Exist</u>

To certify the Class there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality" is thus satisfied upon a showing that "the class members have suffered the same injury" that is "capable of classwide resolution." *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 560 (C.D. Cal. 2012). In this case, there are questions of law or fact common to the Settlement Class that are capable of classwide resolution. Among others, the common questions in this Action include: (1) Whether the Refund Processing Service Fee is a "finance charge" within the meaning of TILA; (2) whether Defendant disclosed to consumers for which it facilitated RPOs the interest rate and/or finance charge, calculated as required by TILA; (3) whether Defendant's illegal violations of TILA constitutes an "unlawful" practice in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; (4) whether Defendant's failure to provide the TILA disclosures constitutes a "fraudulent" practice in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; (5) whether (independent of any TILA violations), Defendant's marketing and sales of the RPOs as a convenient payment option

[2] Excluded from the class are all persons who elect to exclude themselves from the class, Intuit, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

(when in fact it was a form of credit) constitutes a "fraudulent" practice in violation of Cal. Bus. & Prof. Code § 17200, *et seq*.; (6) whether (independent of any TILA violations), Defendant's omission regarding the true expenses of the RPOs (by failing to disclose as interest the cost with deferring payment of the tax preparation fees) constitues a "fraudulent" practice in violation of Cal. Bus. & Prof. Code § 17200, *et seq*.; (7) whether (independent of any TILA violations), Defendant's description of the RPO as a mere "payment option" (rather than as an extension of credit or by describing the finance charge as a "processing" or "service fee" rather than a finance charge) violates California's False Advertising Law of Cal. Bus. & Prof Code § 17500, *et seq*.; and (8) whether Defendant's illegal violations of California's False Advertising Law constitutes an "unlawful" practice in violation of Cal. Bus. & Prof Code § 17200, *et seq*.

### 3. <u>Class Representatives' Claims are Typical of Those of the Class</u>

The "typicality" prerequisite of Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of this requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004); *see also In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996). "Certainly, as in this case, when the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members . . . and if it is based on the same legal theory . . . the typicality requirement is easily satisfied." *Jerry Enters. v. Allied Bev. Group, L.L.C.,* 178 F.R.D. 437, 442 (D.N.J. 1998) (internal citations and quotations omitted); *see also McAnaney v. Astoria Fin. Corp.,* No. 04-CV-1101, 2006 WL 2689621, at*4 (E.D.N.Y. Sept. 19, 2006) (quoting *DeBoer v. Mellon*

*Mortgage. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) ("The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff.").

Here, the proposed Class Representatives (Tasha Smith, Frediereck Smith and Sache Quildon) have claims not only similar, but virtually identical to the Class Members and one another. Indeed, the proposed Class Representatives' claims are typical of the Class Members because they arise from Defendants' alleged common scheme and course of conduct and their allegedly false and misleading statements and omissions. The proposed Class Representatives and members of the Class also share a common injury. Accordingly, the requirement of typicality is satisfied.

**4.      Class Representatives Will Adequately Protect the Interests of the Class**

This requirement of Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor,* 521 U.S. 591, 594 (1997). The factors relevant to a determination of adequate representation are "whether [movant] 'has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is a conflict between [the movant's] claims and those asserted on behalf of the class.'" *In re Cendant Corp. Litig*., 264 F.3d 201, 265 (3d Cir. 2001) (quoting *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)).

Here, the proposed Class Representatives and the Class desire the same outcome of this litigation, namely to retrieve the largest possible monetary recovery from the Defendant as a result of the alleged wrongdoing. Indeed, the proposed Class Representatives' claims coincide identically with the claims of the putative Class. Because of this, the proposed Class Representatives have vigorously prosecuted this case for the benefit of all members of the Class.

Moreover, there is no conflict or any antagonism between the proposed Class Representatives and the putative Class. Accordingly, the proposed Class Representatives have the ability and incentive to represent the claims of the Class vigorously.

Additionally, Plaintiffs have selected and retained competent Class Counsel. As reflected by each firm's resume (*see* Bates Decl., exhibits 2-5), Class Counsel possess extensive experience prosecuting class actions and have served in either a leadership or a substantive role in class action cases throughout the nation. Undoubtedly, Class Counsel is qualified to represent the Class and will, along with Plaintiffs, vigorously protect the interests of the Class and maximize the recovery for all Class members.

### 5. <u>The Requirements of Rule 23(b) Are Satisfied</u>

Certification is appropriate under Rule 23(b) when common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem,* 521 U.S. at 591-94. These requirements are satisfied in this case.

#### a. *Common Questions of Law or Fact Predominate*

In analyzing the predominance factor, the Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 622. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). As such, the Supreme Court has noted that this inquiry "is similar to the requirement that 'claims or defenses' of the named representatives must be 'typical of the claims or defenses of the class.'" *Amchem,* 521 U.S. at 623

n.18; *see also Evans v. Am. Credit Sys.*, 222 F.R.D. 388, 395 (D. Neb. 2004) ("[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately."); *In re Potash Antitrust Litig.,* 159 F.R.D. 682, 693 (D. Minn. 1995) (stating predominance met "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position").

The common issues of law and fact noted above in Section IV(C)(2) clearly predominate over any conceivable individual question because Defendant's alleged misconduct affected all Class Members in the same manner, and each Class Member would need to establish the same facts to demonstrate the alleged violations of TILA, California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), and California's False Advertising Law (Cal. Bus. & Prof. Code § 17500).

### b. A Class Action Is the Superior Method of Adjudicating This Case

The second prong of Rule 23(b) is satisfied by the proposed Settlement. As explained in *Amchem,* "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement.

### D.    The Proposed Notice Program Is Adequate

The proposed Preliminary Approval Order will require the Settlement Administrator to provide individual notice of the Settlement to each Class Member via electronic mail to the extent that Intuit has electronic mail addresses for a Class Member.  The proposed form of the electronic notice is attached to the Settlement Agreement as Exhibit 3.  To the extent that Intuit does not have an electronic mail address for a Class Member or to the extent that the electronic mail "bounces back," then the Settlement Administrator will deliver notice via U.S. first class mail, postage prepaid, in the form attached to the Settlement Agreement as Exhibit 3.  In addition, a detailed notice of the Settlement shall be posted on the Settlement Administrator's website.  The proposed form of the electronic notice is attached to the Settlement Agreement as Exhibit 1.  The Settlement Administrator shall also cause notice to be published in *USA Today*.  The proposed form of the publication notice is attached to the Settlement Agreement as Exhibit 2.

These notices shall advise Class Members of the essential terms of the Settlement, and the rights of Settlement Class Members to share in the recovery.  The claim form that Settlement Class Members will fill out to share in the Settlement Fund is attached as Exhibit 4 to the Settlement Agreement.  The notices shall also advise Settlement Class Members of their rights to request exclusion from the Class or to object to the Settlement, and will provide specifics on the date, time and place of the final approval hearing.  Thus, the notices provide the necessary information for Class Members to make an informed decision regarding the proposed Settlement.  The notices also contain information regarding counsel's fee application and the proposed plan for allocating the Settlement proceeds among Class Members.

In short, the form and manner of notice proposed here fulfill all of the requirements of Rule 23 and due process, and Plaintiffs request that the Court direct that notice of the proposed Settlement be given to the Class.

## V. **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the proposed Settlement be preliminarily approved by the Court, allowing notification to the Class of the terms of the Settlement and of the date of the Final Approval Hearing.


Dated: May 10, 2013                    Respectfully Submitted,

                                       **MILSTEIN ADELMAN, LLP**


                              By: */s/ Gillian Wade*
                                 Gillian Wade (Ca. # 229124)
                                 gwade@milsteinadelman.com
                                 Isaac Miller (Ca. # 266459)
                                 imiller@milsteinadelman.com
                                 2800 Donald Douglas Loop North
                                 Santa Monica, California 90405
                                 Tel: 310-396-9600

                                 *and*

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates (Ca. # 167688)
hbates@cbplaw.com
11311 Arcade Drive, Suite 200
Little Rock, Arkansas 72212
Tel: 501-312-8500

*and*

**GOLOMB & HONIK, PC**
Richard M. Golomb
rgolomb@golombhonik.com
Ruben Honik
rhonik@golombhonik.com
Kenneth J. Grunfeld
kgrunfeld@golombhonik.com
1515 Market Street, Suite 1100
Philadelphia, Pennsylvania 19102
Tel: 215-985-9177

*and*

**KU & MUSSMAN, PA**
Brian T. Ku
brian@kumussman.com
M. Ryan Casey
ryan@kumussman.com
12550 Biscayne Boulevard, Suite 406
Miami, Florida 33181
Tel: 305-891-1322

*Attorneys for Plaintiffs Frederick
and Tasha Smith and the Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **10th day of May, 2013**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By:    */s/ Gillian Wade*