**EXHIBIT E**



2 of 39 DOCUMENTS

IN RE: GROUPION, INC., MARKETING AND SALES PRACTICES LITIGATION,

CASE NO. 11md2238 DMS (RBB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

*2012 U.S. Dist. LEXIS 185750*

**September 28, 2012, Decided**
**September 28, 2012, Filed**

**SUBSEQUENT HISTORY:** Motions ruled upon by *Groupion, LLC v. Groupon, Inc., 2012 U.S. Dist. LEXIS 148216 (N.D. Cal., Oct. 15, 2012)*

**PRIOR HISTORY:** *Groupion, LLC v. Groupon, Inc., 2012 U.S. Dist. LEXIS 102905 (N.D. Cal., July 23, 2012)*

**COUNSEL:** [*1] For Anthony Ferreira, on Behalf of Himself and All Others Similarly Situated and the General Public, Plaintiff: Brian Russell Strange, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA; John J. Stoia, Jr, Phong Le Tran, Thomas R. Merrick, LEAD ATTORNEYS, Robbins Geller Rudman & Dowd LLP, San Diego, CA; Rachel L Jensen, LEAD ATTORNEY, Robbins Gellar Rudman & Dowd LLP, San Diego, CA.

For Heather Kimel, Plaintiff: Brian Russell Strange, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA; Dana E. Deering, David A. Futscher, LEAD ATTORNEYS, Parry, Deering, Futscher & Sparks, Covington, KY; John J. Stoia, Jr, Thomas R. Merrick, LEAD ATTORNEYS, Robbins Geller Rudman & Dowd LLP, San Diego, CA; Phong L. Tran, LEAD ATTORNEY, Robbins Geller Rudman & Dowd - San Diego, San Diego, CA; Rachel L Jensen, LEAD ATTORNEY, Robbins Gellar Rudman & Dowd LLP, San Diego, CA.

For Brian Zard, Individually of himself and other individuals similarly situated, Plaintiff: Andrew-NA S Friedman, LEAD ATTORNEY, Not Admitted; Brian Russell Strange, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA; Elaine A. Ryan, LEAD ATTORNEY, PRO HAC VICE, Bonnett, Fairbourn, Friedman & Balint, PC, Phoenix, AZ; Myles A Schneider, [*2] LEAD ATTORNEY, Myles A. Schneider & Associates, LTD, Elk River, MN; Patricia N Syverson, LEAD ATTORNEY, Bonnett, Fairbourn, Friedman & Balint, PC, Phoenix, AZ; Todd David Carpenter, LEAD ATTORNEY, Bonnett Fairbourn Friedman & Balint, PC, Phoenix, AZ.

For Sarah Gosling, Individually of herself and other individuals similarly situated and the general public, Plaintiff: Brian Russell Strange, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA; John J. Stoia, Jr, Rachel Lynn Jensen, Thomas R. Merrick, LEAD ATTORNEYS, Robbins Geller Rudman & Dowd LLP, San Diego, CA; Phong L. Tran, LEAD ATTORNEY, Robbins Geller Rudman & Dowd - San Diego, San Diego, CA.

For Ashley Christensen, Class representatives on behalf of herself and others situated, Plaintiff: Brendan S. Thompson, LEAD ATTORNEY, PRO HAC VICE, Cuneo Gilbert & LaDuca LLP, Washington, DC; Brian Russell Strange, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA; Charles E. Schaffer, LEAD ATTORNEY, Levin Fishbein Sedran & Berman, Philadelphia, PA; Charles-NA J. LaDuca, LEAD ATTORNEY, Not Admitted; Christopher M. Ellis, LEAD ATTORNEY, PRO HAC VICE, Bolen Robinson & Ellis, Decatur, IL; Clayton D Halunen, LEAD ATTORNEY, Halunen & Associates, [*3] Minneapolis, MN; Michael A. Johnson, LEAD ATTORNEY, Michael A. Johnson & Associates, Chicago, IL; Michael A. McShane, LEAD ATTORNEY, Audet & Partners, LLP, San Francisco,

Case5:12-cv-00222-EJD   Document101-5   Filed09/20/13   Page3 of 12

Page 2
2012 U.S. Dist. LEXIS 185750, *

CA; Shawn J. Wanta, LEAD ATTORNEY, PRO HAC VICE, Baillon Thome Jozwiak & Wanta LLP, Minneapolis, MN.

For William Eidenmuller, Plaintiff: Brian Russell Strange, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA; Elaine A. Ryan, LEAD ATTORNEY, PRO HAC VICE, Bonnett, Fairbourn, Friedman & Balint, PC, Phoenix, AZ; Patricia N Syverson, LEAD ATTORNEY, Bonnett, Fairbourn, Friedman & Balint, PC, Phoenix, AZ; Todd D. Carpenter, LEAD ATTORNEY, Bonnett, Fairbourn, Friedman & Balint, P.C., San Diego, CA.

For Jason Cohen, Individually of himself and other individuals similarly situated and he general public, Plaintiff: Brian Russell Strange, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA; Jonathan Stephen Burns, LEAD ATTORNEY, Wites & Kapetan PA, Lighthouse Point, FL; Marc Aaron Wites, LEAD ATTORNEY, Wites & Kapetan, Lighthouse Point, FL.

For Carlos Vazquez, class representative on behalf of himself and others similarly situated, Plaintiff: Brian Russell Strange, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA; Charles  [*4] J. LaDuca, LEAD ATTORNEY, Cuneo, Gilbert & LaDuca, LLP, Washington, DC.

For Eli R. Johnson, Plaintiff: Brian Russell Strange, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA; Clayton D Halunen, LEAD ATTORNEY, Halunen & Associates, Minneapolis, MN; Michael Alan Johnson, LEAD ATTORNEY, Michael A. Johnson & Associates, Chicago, IL; Shawn J. Wanta, LEAD ATTORNEY, PRO HAC VICE, Baillon Thome Jozwiak & Wanta LLP, Minneapolis, MN.

For Julie Buckley, class representative on behalf of themselves and others similarly situated, Plaintiff: Brian Russell Strange, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA; Clayton D Halunen, LEAD ATTORNEY, Halunen & Associates, Minneapolis, MN; Shawn J. Wanta, LEAD ATTORNEY, PRO HAC VICE, Baillon Thome Jozwiak & Wanta LLP, Minneapolis, MN.

For Sarah Mehel, Plaintiff: Brian Russell Strange, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA; Julio Joaquin Ramos, LEAD ATTORNEY, Law Offices of Julio J Ramos, San Francisco, CA.

For Nevin Booth, Plaintiff: Brian Russell Strange, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA; Stephen A. Swedlow, LEAD ATTORNEY, Korein Tillery LLC, Chicago, IL; Derek A Newman, Newman Du Wors, Santa Monica, CA.

For Barrie  [*5] Arliss, individually and on behalf of all others similarly situated, Jeff Lawrie, individually and on behalf of all others similarly situated, Plaintiffs: Brian Russell Strange, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA; Christopher Robert Carney, Jay S Carlson, Kenan Lee Isitt, Sean P Gillespie, LEAD ATTORNEYS, CARNEY GILLESPIE ISITT PLLP, SEATTLE, WA; Jason Moore, LEAD ATTORNEY, VAN EYK & MOORE, SEATTLE, WA; Shaun Van Eyk, LEAD ATTORNEY, Van Eyk & Moore PLLC, Seattle, WA.

For Michael McPherson, on behalf of himself and on behalf of a class of persons and entities similarly situated in the State of Alabama, Plaintiff: James Michael Terrell, LEAD ATTORNEY, McCallum Methvin & Terrell PC, Birmingham, AL; Robert Brent Irby, LEAD ATTORNEY, McCallum, Hoaguland Cook & Irby LLP, Vestavia Hills, AL.

For Eric Terrell, on behalf of hisself and all others similarly situated and the general public, Plaintiff: Reginald Terrell, LEAD ATTORNEY, The Terrell Law Group, Oakland, CA; Donald Chidi Amamgbo, Esq., Amamgbo & Associates, Culver City, CA.

Kenneth Hinton, Plaintiff, Pro se, Arlington, VA.

E. G. Johnson, Plaintiff, Pro se, Silver Spring, MD.

For Nicholas Spencer, individually and on behalf  [*6] of all others similarly situated, Plaintiff: Mark Anthony Bulgarelli, LEAD ATTORNEY, Progressive Law Group LLC, Chicago, IL.

For Groupon, Inc., Individually and on Behalf of All Similarly Situated Entites, Defendant: Anthony Darrell Lehman, LEAD ATTORNEY, DLA Piper LLP (US), Atlanta, GA; Bradley T. Meissner, LEAD ATTORNEY, Fenwick & West, LLP, Seattle, WA; Christopher Munro Young, LEAD ATTORNEY, DLA Piper US, San Diego, CA; Edward Colin Thompson, Fredrick Howard Lebron McClure, LEAD ATTORNEYS, DLA Piper LLP (US), Tampa, FL; Jarod M Bona, LEAD ATTORNEY, DLA Piper LLP, Mpls, MN; Matthew J. Iverson, LEAD ATTORNEY, DLA Piper US LLP, Boston, MA; Michael D. Vhay, LEAD ATTORNEY, DLA Piper Rudnick Gray Cary US LLP, Boston, MA; Noah A Katsell, LEAD ATTORNEY, DLA Piper LLP (US), San Diego, CA; Peter M. Ellis, LEAD ATTORNEY, PRO HAC VICE, DLA Piper LLP (US), Chicago, IL; Ronald M. Lepinskas, LEAD ATTORNEY, DLA Piper US LLP IL, Chi-

cago, IL; Samuel Bayard Isaacson, LEAD ATTORNEY, PRO HAC VICE, DLA Piper LLP US, Chicago, IL; Sara Z. Moghadam, LEAD ATTORNEY, DLA PIPER US LLP, Washington, DC; Shirli Fabbri Weiss, LEAD ATTORNEY, DLA Piper Rudnick Gray Cary, San Diego, CA; Stellman Keehnel, LEAD ATTORNEY, [*7] DLA Piper LLP US, Seattle, WA.

For Nordstom Inc, Individually and on Behalf of All Similarly Situated Entities, Defendant: Christopher Munro Young, LEAD ATTORNEY, DLA Piper US, San Diego, CA; Peter M. Ellis, LEAD ATTORNEY, PRO HAC VICE, DLA Piper LLP (US), Chicago, IL; Shirli Fabbri Weiss, LEAD ATTORNEY, DLA Piper Rudnick Gray Cary, San Diego, CA.

For Fun Time, LLC, doing business as Wheel Fun Rentals, Defendant: Christopher Munro Young, LEAD ATTORNEY, DLA Piper US, San Diego, CA; Jarod M Bona, LEAD ATTORNEY, DLA Piper LLP, Mpls, MN; Shirli Fabbri Weiss, LEAD ATTORNEY, DLA Piper Rudnick Gray Cary, San Diego, CA.

For YMCA of Metropolitan Washington, Defendant: Shirli Fabbri Weiss, LEAD ATTORNEY, DLA Piper Rudnick Gray Cary, San Diego, CA.

For Whirly West Inc., doing business as WhirlyBall, Defendant: Christopher Munro Young, LEAD ATTORNEY, DLA Piper US, San Diego, CA; Ronald M. Lepinskas, LEAD ATTORNEY, DLA Piper US LLP IL, Chicago, IL; Samuel Bayard Isaacson, LEAD ATTORNEY, PRO HAC VICE, DLA Piper LLP US, Chicago, IL; Shirli Fabbri Weiss, LEAD ATTORNEY, DLA Piper Rudnick Gray Cary, San Diego, CA.

For Full Circle Farms, Inc., a Washington corporation, Defendant: David C Lundsgaard, LEAD [*8] ATTORNEY, GRAHAM & DUNN, SEATTLE, WA; Shirli Fabbri Weiss, LEAD ATTORNEY, DLA Piper Rudnick Gray Cary, San Diego, CA; Stellman Keehnel, LEAD ATTORNEY, DLA Piper LLP US, Seattle, WA.

For The Gap, Inc., Defendant: Joseph Anton Roselius, LEAD ATTORNEY, DLA Piper US LLP, Chicago, IL; Ronald M. Lepinskas, LEAD ATTORNEY, DLA Piper US LLP IL, Chicago, IL; Samuel Bayard Isaacson, LEAD ATTORNEY, PRO HAC VICE, DLA Piper LLP US, Chicago, IL; Shirli Fabbri Weiss, LEAD ATTORNEY, DLA Piper Rudnick Gray Cary, San Diego, CA.

**JUDGES:** HON. DANA M. SABRAW, United States District Judge.

**OPINION BY:** DANA M. SABRAW

**OPINION**

**ORDER DENYING JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**[Docket Nos. 48, 72]**

This case comes before the Court on the parties' joint motion for final approval of class action settlement. Several purported members of the class filed objections to the proposed settlement. Plaintiffs and Defendants filed a joint response to those objections. The motion came on for hearing on September 7, 2012. John Stoia, Rachel Jensen and Thomas Merrick appeared on behalf of Plaintiffs, and Shirli Weiss and Christopher Young appeared on behalf of Defendants. Grenville Pridham appeared on behalf of objector Andrea Pridham, [*9] Theodore Frank, Esq. appeared as an objector, Marc Bulgarelli appeared on behalf of objector Nicholas Spencer and Paul Hansmeier appeared on behalf of objector Padraigin Browne. After reviewing the parties' briefs, the written objections and the responses thereto, and the record on file in this case, and after hearing oral argument from counsel, the Court denies the motion.

**I.**

**BACKGROUND**

On June 2, 2011, the United States Judicial Panel on Multidistrict Litigation ("the Panel") transferred the current cases to this Court for coordinated and consolidated proceedings. As stated by the Panel in its Transfer Order,

> [a]ll actions involve common factual questions regarding Groupon's sale of gift certificates/vouchers with allegedly improper expiration dates and other objectionable provisions (e.g., requirements that gift certificates be used in a single transaction, that cash refunds will not be made for unused portion, and class action waiver and mandatory arbitration provisions). Plaintiffs contend that Groupon and the various retailer defendants' sale of the gift certificates/vouchers violate, inter alia, the federal Credit Card Accountability, Responsibility, and Discovery Act (CARD Act) [*10] and Electronic Funds Transfer Act, as well as state consumer protection laws.

After an initial conference with counsel, Plaintiffs Barry Arliss and Jeff Lawrie filed a motion to remand

their case to Washington state court. At Defendants' request, the Court set a briefing schedule and hearing date on a motion to compel arbitration, and the parties proceeded to take discovery on that issue. Approximately two months later, counsel informed the Court that, through mediation with the Honorable Daniel J. Weinstein (Ret.), the case had settled in principle and the parties were working on a settlement agreement. To accommodate those efforts, counsel requested a stay of the proceedings, which the Court granted. That stay remained in effect for approximately six months, during which time the parties finalized their settlement agreement.

**A. The Settlement Agreement**

The settlement agreement includes an award of injunctive relief and the establishment of a settlement fund to which members of the proposed class may submit a claim. The injunctive relief provides as follows:

> (1) Groupon may sell vouchers that impose expiration dates on the Promotional Value [1] of the voucher. However, for three years after [*11] the effective date of the settlement, no more than 10% of Groupon's Daily Deals will have an expiration date of less than thirty (30) days for the Promotional Value, and with certain exceptions, there will be no expiration date on the Customer Purchase Price. [2]
>
> (2) In the event of a dispute between a class member and Groupon concerning the Promotional Value of a Groupon voucher purchased after the effective date, the class member agrees to submit the dispute to arbitration before the Honorable Daniel Weinstein at JAMS.
>
> (3) After the effective date, if there is a difference between the expiration of the Promotional Value and the Customer Purchase Price, Groupon shall include clear and conspicuous disclosures explaining that difference on the voucher and on promotions displayed to the consumer prior to purchase.
>
> (4) With certain exceptions, Groupon vouchers will be transferable.

---

1   "Promotional Value" is the monetary amount stated on a Groupon Voucher in excess of the Customer Purchase Price.
2   "Customer Purchase Price" means the amount that a Person paid for a Groupon Voucher.

The settlement fund will be in the amount of $8.5 million, and will be funded by Groupon. This fund will be used to [*12] pay attorneys' fees and expenses, claims administration expenses, and incentive awards and expenses. What remains of the fund will be used to pay class members' claims, reimburse Groupon for paying certain claims, and to establish a *cy pres* fund.

The claims process is two-tiered. To be eligible for the first tier, the class member must have purchased or received a Groupon voucher before December 1, 2011, which was never redeemed or refunded, and submit a proof of claim by the claims deadline. Class members whose claims meet these requirements will receive a settlement voucher, valid for 130 days, to redeem the Customer Purchase Price of the expired Groupon voucher. However, if the merchant partner is out of business at the time the claim is submitted, the class member will receive a refund of the Customer Purchase Price of the voucher. If the merchant partner goes out of business after the claim is submitted, the class member will have to submit another claim for a refund of the Customer Purchase Price. In the event the merchant partner refuses to honor the settlement voucher, the class member will have to submit another claim for a refund, to which Groupon will add 20% of the Promotional [*13] Value of the voucher.

If, after paying the first-tier claims, attorneys' fees, expenses and incentive awards, there remains more than $75,000 in the settlement fund, the claims administrator will issue a second notice concerning the remaining funds. [3] Those funds will be made available to class members who purchased Groupon vouchers after December 1, 2011, and submit a valid claim for a refund. Groupon may request reimbursement from the settlement fund for any refunds paid as part of this second round of claims. These claims will be paid until the settlement fund reaches $75,000, at which time 50% of the fund will be donated to the Electronic Frontier Foundation ("EFF") and the remaining 50% will be donated to the Center for Democracy and Technology ("CDT").

---

3   The parties refer to this as the "Second Settlement Fund."

The claims administrator issued notice of the proposed settlement via email to 14,183,620 class members. As of September 7, 2012, the claims administrator had received 48,059 claim forms, even though the time for submitting claims has not formally begun. The claims

Page 5

2012 U.S. Dist. LEXIS 185750, *

administrator also received 1,790 timely requests for exclusion on behalf of 1,815 individuals, 16 untimely [*14] requests for exclusion and six objections to the proposed settlement.

As part of the settlement, class counsel agreed to apply for an award of attorneys' fees and expenses not to exceed 25% of the settlement fund, and for incentive awards of no more than $500 per Plaintiff. Counsel have complied with that obligation, and seek an award of $2,125,000 in attorneys' fees and expenses, and incentive awards of $500 for each of the seventeen representative Plaintiffs.

**B. Objections to the Settlement**

The Court received eighteen objections to the proposed settlement and/or the attorneys' fee award. [4] Those objections are as follows:

(1) Warren Sibley, Tracy Klinge, Jordon Echols and Kimberly Cogbill, through their attorney Thomas L. Cox, Jr., object to the class notice and the proposed settlement. They assert the notice does not include the number of class members, how many notices were sent out or how many were returned as undeliverable. As for the proposed settlement, these class members object to the claim form as complex. They also object to being required to submit a voucher number on the claim form. These class members contend the settlement vouchers should not have an expiration date, or [*15] if they do, it should be at least one year from the date of issuance. They also complain that the injunctive relief is worthless.

(2) Allen Wagner, Esq. requests exclusion from the class, and also objects to the scope of the release.

(3) Dan Kane requests exclusion from the class, and offers his opinion on the merits of Plaintiffs' case.

(4) Sherri Ledner objects to the proposed settlement on the ground it provides no benefit to class members. She believes Groupon vouchers do not have expiration dates, and that trading those vouchers for settlement vouchers, which expire 130 days after issuance, does not benefit the class.

(5) Phuong Wolkiewicz objects to the proposed settlement on the grounds it only benefits counsel, and the terms of Groupon's vouchers are already clear.

(6) Daniel Hall objects to the award of fees and expenses as "too high." He believes the settlement fund is inadequate, and the class does not satisfy the typicality and predominance requirements for certification. He also objects to having to provide a proof of purchase, and asserts the *cy pres* fund should be reserved for class members.

(7) Sean Hull also objects to the proof of purchase requirement, and asserts the fees [*16] and expenses are too high. He contends the notice failed to include a claim deadline, and the commonality, predominance and superiority requirements are not met.

(8) Karen Barber objects to the proposed settlement on the ground the case has no merit.

(9) Julie Simmons objects to the proposed settlement on the ground the case has no merit.

(10) Joan Sheppard objects to the proposed settlement as unfair and inadequate. She asserts the notice does not satisfy due process and does not include the terms of the proposed settlement. She also contends the *cy pres* award does not comply with *Dennis v. Kellogg, 697 F.3d 858, 2012 WL 3800230 (9th Cir. 2012)*.

(11) Andrew E. Westley objects to the claim form as confusing.

(12) Padraigin Browne, through her attorneys Brett L. Gibbs and Paul Hansmeier, objects to the proposed settlement and the requested attorneys' fees. She states the proposed settlement is a "coupon settlement," and as such, it violates the Class Action Fairness Act ("CAFA"). She complains the settlement vouchers are dependent on the voluntary participation of the merchants. She also complains that the Second Settlement Fund does not benefit the class and reverts those funds [*17] to Groupon. Ms. Browne asserts the injunctive relief is illusory, and that individual issues predominate because of the differences in the applicable state laws. As for the fees and expenses, Ms. Browne asserts they are disproportionate to the

benefit provided to the class. She objects to the "clear sailing" agreement, [5] the use of block billing and billing in quarter-hour increments, believes the Court should use the lodestar method rather than the common fund method, and argues that the timing of the award is premature.

(13) Chris Brown, Maggie Strohlein and Robert Falkner, through their attorney Darrell Palmer, object to the *cy pres* award, assert that the fees are excessive and the timing of their award is premature, and object to the settlement as illusory.

(14) Nicholas Spencer, through his attorney Marc Bulgarelli, objects to the amount of the settlement fund as inadequate. He argues the settlement vouchers expire sooner than required under Illinois law, and requests that the Court carve out Illinois consumers of Gap Groupons from the settlement class.

(15) Maureen Connors, Aileen Connors, Chris Schulte, Andrea Miller and Jen Maxfield, through their attorneys Steve A. Miller, Jonathan [*18] E. Fortman, John C. Kress and J. Scott Kessinger, object to the proposed settlement on several grounds. First, they state the settlement is worthless. Second, they state the settlement allows Groupon to continue its allegedly illegal behavior, *i.e.*, setting expiration dates for the vouchers. Third, these class members object to the *cy pres* award. Fourth, these class members assert there is a conflict between claimants to the first settlement fund and the second settlement fund.

(16) Andrea Pridham, through her attorneys Grenville Pridham, Mark Lavery and Christopher Langone, objects to the proposed settlement on the ground the *cy pres* recipients have no connection to this case. She also asserts the *cy pres* award is the result of collusion between the *cy pres* recipients and defense counsel.

(17) Evan Spies, through Mr. Lavery, also objects to the proposed settlement. Like Ms. Pridham, he asserts counsel colluded with the *cy pres* recipients in crafting the *cy pres* award. He also contends counsel is not adequately prosecuting the claims for statutory damages, the representative plaintiffs are inadequate given the two-tiered system of access to the settlement fund, and the class mechanism [*19] is not a superior method of adjudicating these claims.

(18) Theodore Frank, Esq. objects to the proposed settlement on the grounds it leaves the class members worse off than they would be if the case had never been filed, and because it benefits the attorneys at the expense of the class.

---

4  Counsel state they received seven (7) additional objections that were not filed with the Court. Counsel's position is that all objections were required to be filed with the Court, and since these were not, the Court should not consider them. The Court also received, via e-mail and regular mail, an objection from "MK Sayers." At the Court's request, counsel provided a response to this objection indicating it is untimely. The Court agrees with counsel's position on these objections, and thus declines to address them further.

5  A "clear sailing" agreement is one in which the defendant agrees not to object to an award of attorneys' fees to the plaintiff's counsel. *In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011)*.

## II.

### DISCUSSION

"The settlement of a class action must be fair, adequate and reasonable." *Dennis, 697 F.3d 858, 2012 WL 3800230, at *4* (citing *Fed. R. Civ. P. 23(e)(2)*). When, as in [*20] this case, "class counsel negotiates a settlement agreement before the class is even certified, courts 'must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations.'" *Id.* (quoting *Bluetooth, 654 F.3d at 947*). "In such a case, settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under *Rule 23(e)*.'" *Id.* (quoting *Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998))*. "'To survive appellate review, the district court must show it has explored comprehensively all factors,' and must give 'a reasoned response' to all non-frivolous objections[.]'" *Id.* (citations omitted). Here, the Court re-

ceived numerous objections to the settlement from numerous members of the proposed class, all of which are addressed below.

### A. Notice of Settlement

There were several objections to the notice of settlement. First, Objectors Sibley, Klinge, Echols and Cogbill object on the grounds that the notice does not include the number of class members, how many notices were sent out and [*21] how many were returned as undeliverable. Second, Objector Hull objects to the notice on the ground it fails to include a deadline for the submission of claims. Third, Objector Sheppard objects to the notice on the grounds it does not satisfy due process because it fails to include the terms of the settlement.

"Notice provided pursuant to *Rule 23(e)* must 'generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc., 696 F.3d 811, 2012 WL 4125857, at *10 (9th Cir. 2012)* (quoting *Rodriguez v. West Publishing Corp., 563 F.3d 948, 962 (9th Cir. 2009)*. There is no requirement that the notice include the number of class members, how many notices were sent out, how many were returned as undeliverable or a deadline for submitting claims. The objections to the notice on those grounds are, therefore, overruled. [6]

> 6   The Court notes the claims administrator sent notice via e-mail to all 14,183,620 class members, and the settlement website states the deadline to submit claims will be determined by the Court.

Ms. Sheppard's objection to the notice as violative of due process [*22] because it failed to include the terms of the settlement is, likewise, overruled. The notice provides general information about the settlement, and directs class members to the settlement website where can they review the details of the settlement. The notice also includes the deadline to request exclusion from, or objections to, the settlement, and the website lists the date and time for the final approval hearing. This information satisfies the due process concerns of notice and an opportunity to be heard. Therefore, the Court overrules the objections to the notice of settlement.

### B. Claim Form

In addition to the objections to the notice of settlement, there are several objections to the claim form. Specifically, the Objectors state the form is complex and confusing, and they object to having to provide a voucher number or other proof of purchase.

The Court has reviewed the claim form, and overrules each of these objections. Contrary to the Objectors' assertion, the claim form is not complex or confusing, but rather it is clear and straightforward. This is evidenced by the number of claims already received (more than 48,000). Furthermore, the requirement of a voucher number or other [*23] proof of purchase serves "to ensure that money is fairly distributed for valid claims." *Trombley v. National City Bank, 826 F.Supp.2d 179, 201 (D.D.C. 2011)*. Thus, the objections to the claim form are overruled.

### C. Vouchers

Next, there are several objections to the settlement vouchers. Specifically, there are objections to the imposition of an expiration date on the vouchers, and complaints that the vouchers depend on the voluntary participation of the merchant partners. Objector Browne also asserts the vouchers are coupons, rendering this a "coupon settlement."

At first blush, the Objectors' concern about the expiration date on the vouchers is well taken. The existence of expiration dates on Groupon vouchers is the primary complaint in this case, and it appears inconsistent to issue vouchers with expiration dates if the expiration dates were the problem with the original Groupon vouchers. However, whether Groupon vouchers are subject to the laws regarding expiration dates is an open question. The parties compromised their positions on this issue by imposing expiration dates on the settlement vouchers, but Groupon also agreed that for three years following the effective date of the settlement [*24] (1) it would not to impose expiration dates on the Purchase Price of many of its Daily Deals and (2) it would not impose an expiration date of less than thirty days on more than ten percent of its annual Daily Deals. This is a fair, adequate and reasonable approach to an undecided issue of law, thus the objection to the imposition of expiration dates on the settlement vouchers is overruled.

The objection to the merchant partners' voluntary participation in the settlement program is also overruled. With a few exceptions, none of Groupon's merchant partners are parties to this case, and thus they have no legal obligation to participate in the settlement. Furthermore, there is no evidence that any of the merchant partners will not accept the settlement vouchers, and thus the objection is entirely speculative. For these reasons, this objection is overruled.

The Court also overrules Objector Browne's assertion that this is a "coupon settlement." "While CAFA does not expressly define what a coupon is, the legislative history suggests that a coupon is a *discount* on another product or service offered by the defendant in the

lawsuit." *Fleury v. Richemont North Am., Inc., No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 112459, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008)* [*25] . Browne has not shown the settlement vouchers being offered in this case fall within that definition. Accordingly, Browne's objection to the settlement vouchers is overruled.

**D. Release**

Allen Wagner objects to the release, stating it applies to all Groupon customers while only a subclass of customers is afforded any relief from the settlement. However, that objection is unfounded. The release applies only to members of the class, not all Groupon customers, and all members of the class are entitled to some form of relief from the settlement. Accordingly, Mr. Wagner's objection to the scope of the release is overruled.

**E. Amount of Fund**

Daniel J. Hall objects to the amount of the settlement fund as inadequate. However, this objection is general and conclusory, and thus the Court declines to address it. *See In re Enron Corp. Securities, Derivative & ERISA Litig., 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008)* (declining to address objections that are non-specific and unsupported by evidence or authority).

**F. Second Settlement Fund**

There are also objections to the Second Settlement Fund. Specifically, Browne objects to the Second Settlement Fund as failing [*26] to provide any benefit to the class and because it reverts funds to Groupon. Objectors Connors, Schulte, Miller and Maxfield also object to the Second Settlement Fund on the ground it creates a conflict between class members.

None of these objections has merit, however. To the extent there is a Second Settlement Fund, it is only available, and provides benefits, to class members. [7] Browne's assertion to the contrary is based on a misreading of the settlement agreement. Browne is correct that Groupon may request reimbursement for claims submitted on the Second Settlement Fund, but that does not make the settlement unfair, inadequate or unreasonable. Unlike the first round of claims, which must be submitted directly to the Claims Administrator, claims on the Second Settlement Fund may be submitted to either the Claims Administrator or Groupon. In the event a claim is submitted directly to Groupon, and Groupon pays the claim, Groupon may request reimbursement from the Second Settlement Fund for that payment only. Contrary to Browne's assertion, the Second Settlement Fund is not "a tool for Groupon to reimburse itself for its ongoing business expenses." (Objection of Padraigin Brown at 12.) [*27] Thus, these objections are overruled.

> 7  Contrary to the objections of Connors, Schulte, Miller and Maxfield, the Second Settlement Fund is available to the entire class, not just a sub-class. Indeed, there is no sub-class as part of the settlement. Therefore, the objection that the Second Settlement Fund creates a conflict between the class and some other undefined "sub-class" is overruled.

**G. Injunctive Relief**

Next, there are objections to the injunctive relief provided as part of the settlement. Several Objectors assert the injunctive relief is worthless and illusory. However, the Court disagrees. As part of the settlement, Groupon has agreed to do the following: (1) For three years following the effective date of the settlement, Groupon will not offer to sell more than ten percent of its Daily Deals with an expiration date of less than thirty days for the Promotional Value or any expiration date for the Purchase Price; (2) Groupon will include clear and conspicuous disclosure of the expiration dates for the Promotional Value and the Purchase Price of its vouchers on the vouchers and on its promotions, and (3) Groupon will allow for transferability of its vouchers. Objectors state Groupon [*28] already provides some or all of these services, and they rely on Groupon's website to support that assertion. However, at the final approval hearing, counsel represented to the Court that those changes were the result of the present case. Thus, contrary to the Objector's position, the settlement has provided and will provide valuable injunctive relief to the class. Accordingly, these objections are overruled.

**H. Fees and Expenses**

There are numerous objections to the attorneys fee provision of the settlement. The first objection is the fees and expenses are too high. Second, there is an objection that the fees are disproportionate to the relief provided to the class. Third, there is an assertion that the fee provision includes a "clear sailing" arrangement, to which there is an objection. Fourth, there is an objection to the timing of the fee award. [8]

> 8  There are two additional objections to the requested fees, namely to the use of block billing and billing in quarter-hour increments, and to the common fund approach. Since those aspects of the fee request are not part of the settlement, the Court will not address those objections in this order.

The settlement provides that class counsel's [*29] request for fees and expenses shall not exceed 25% of the settlement fund. The settlement fund is $8.5 million, and the amount of fees and expenses requested, $2.125 million, constitutes 25% of the settlement fund. [9] The Ninth Circuit "'has established 25% of the common fund as a benchmark award for attorney fees.'" *Staton v. Boeing Co., 327 F.3d 938, 968 (9th Cir. 2003)* (quoting *Hanlon, 150 F.3d at 1029*). Thus, the objections that the fees and expenses are generally too high and disproportionate to the relief provided to the class are overruled.

> 9   According to class counsel, the lodestar method would result in fees totaling more than 25% of the settlement fund, but class counsel is limiting its request to 25% of the settlement fund as set out in the settlement.

Class counsel does not dispute that the fee provision of the settlement includes a "clear sailing" agreement, but they do dispute that agreement renders the settlement unfair, inadequate or unreasonable. Although "clear sailing" agreements may be a subtle sign "that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations[,]" *Bluetooth, 654 F.3d at 947*, there is [*30] no evidence that occurred in the present case. Class counsel agreed to limit their fees and expenses to the established benchmark in common fund cases, leaving the majority of the fund ($6.375 million) for the class members. Furthermore, the Court has witnessed counsel's conduct in this case, both prior, during and after the settlement negotiations, and at no time has there been any inkling of collusion between counsel or the parties. On the contrary, and as stated by Judge Weinstein, it appears this settlement "represents a heavily negotiated and arm's-length compromise of disputed claims among experienced and able counsel." (Decl. of the Honorable Daniel H. Weinstein (Ret.) in Supp. of Joint Mot. for Final Approval of Class Action Settlement ¶ 16.) Accordingly, the Court overrules the objection to the "clear sailing" portion of the settlement.

The final objection to the fee provision of the settlement is to the timing of the fee award. Specifically, there are objections to payment of any fee award before the claims process is completed. Objectors assert class counsel should have to wait until all claims are paid to see the actual value of the settlement to class members, and that [*31] the fees awarded should be based on that value rather than the full value of the settlement fund. However, this argument appears to be based on a finding that this is a "coupon settlement," and as stated above, it is not. Accordingly, the Court overrules the objections to the timing of any fee award.

### I. Rule 23 Requirements

Next, there are several objections to certifying a class in this case. Specifically, there are objections to the commonality, typicality, adequacy, predominance and superiority requirements for certifying a class pursuant to *Federal Rule of Civil Procedure 23*. These objections fall into two categories. First, Objectors state the commonality, typicality and predominance elements are not met because of the differences in the applicable state laws. Second, Objectors state the class representatives and class counsel are not adequately representing the interests of class members with claims for statutory damages, and handling those claims on a class basis is an inferior method of adjudicating those claims.

Although differences in state laws can pose problems for certification of a multistate class, they do not preclude certification of such a class. Indeed, problems arise [*32] only if there are significant differences in the applicable state laws, *see Trombley, 826 F.Supp.2d at 194* (stating existence of minor differences in state law does not preclude certification of nationwide class), or if there are conflicts between the different state laws. *See In re Ins. Brokerage Antitrust Litig., 282 F.R.D. 92, 114 (D.N.J. 2012)* ("state law differences will not preclude certification of a nationwide class unless there is clear evidence of a conflict of interest.") Here, Objectors have not explained how the applicable state laws differ, nor have they identified any conflicts between the applicable state laws. Accordingly, this objection to certification of the class is overruled.

The Court likewise overrules the objections concerning any claims for statutory damages. Objector Spies appears to argue that the class representatives are not adequately prosecuting the claims for statutory damages under the CARD Act, but he fails to mention there is a cap on the amount of statutory damages available in class actions under that statute. *See 15 U.S.C. § 1693m(a)(2)(B)*. He also fails to mention that the cap is $500,000, which is considerably less than the settlement fund in [*33] this case. Objector Spies also asserts this class action is not the superior method for adjudicating the claims for statutory damages because the individual claims could be worth more than the class claims. That individual claims, in the aggregate, may be worth more than the class claims as a whole, however, does not make the class action an inferior method of adjudicating these claims. Indeed, the value of the claims is not the determinative factor, and is arguably irrelevant, in the superiority analysis. Rather, the Rule includes factors such as:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Fed. R. Civ. P. 23(b)(3)(A)-(D)*. Objector Spies does not address any of these factors in his superiority argument, and thus, the Court overrules his objections.

### J. *Cy Pres*

The final issue is the *cy pres* award, to which there are several objections. First, there [*34] is an objection that the *cy pres* award should be reserved for class members. Second, there is an objection that the *cy pres* award does not comply with *Dennis*. Third, there is an objection that the *cy pres* award is the result of collusion between the *cy pres* recipients and counsel for the parties.

Starting with the latter objection, there is no evidence of any collusion between counsel or the *cy pres* recipients. The objection is wholly speculative and conjectural, and thus the Court overrules it.

In *Dennis*, the Ninth Circuit reversed an order granting final approval to a class action settlement based on the *cy pres* award. There, the court held, "[t]o avoid the 'many nascent dangers to the fairness of the distribution process,' we require that there be 'a driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" *697 F.3d 858, 2012 WL 3800230, at *5* (quoting *Nachshin v. AOL, LLC, 663 F.3d 1034, 1038 (9th Cir. 2011))*. In that case, the class consisted of persons who were subjected to Kellogg's advertisements that its cereal improved attentiveness, while the *cy pres* beneficiaries were intended to be charities that feed the indigent. [10] Despite counsel's assertion that the two groups were [*35] related, the court found the *cy pres* award was "divorced from the concerns embodied in consumer protection laws such as the UCL and the CLRA." *697 F.3d 858, Id. at *6*.

10   The parties in *Dennis* did not identify any specific charities to receive the *cy pres* award. Instead, they provided the charities would be identified at a later date and be subject to court approval. The Ninth Circuit disapproved of this approach, stating it "restricted our ability to undertake the searching inquiry that our precedent requires." *697 F.3d 858, Id. at *7*.

Here, the *cy pres* beneficiaries are the EFF and the CDT. Counsel argues these beneficiaries are sufficiently related to this case because the "Class Members are Internet users whose claims arise from Groupon's purportedly unlawful online marketing and sales practices[,]" and the EFF and CDT are "two advocacy organizations dedicated to pursuing Internet consumer rights." (Joint Response to Objections to Final Approval of Class Action Settlement at 18.) However, neither the EFF nor the CDT is expressly committed to righting the specific wrongs alleged in this case, namely the imposition of expiration dates and other restrictions on consumer vouchers, or the misleading and deceptive [*36] advertising associated with those vouchers. That consumers purchase the vouchers on the Internet is not enough. Indeed, it is incidental to the claims at issue in this case.

Counsel argues there need not be "direct alignment" between the *cy pres* recipient and the class, and that an alignment of interest is sufficient, but the Court disagrees. *Dennis* requires that there be a "driving nexus" between the class and the *cy pres* beneficiaries, which is more than a simple alignment of interest. "Nexus" implies that there be an actual connection, not just between the class and *cy pres* beneficiary, but between the *claims alleged in the case* and the *cy pres* beneficiary. *See Nachshin, 663 F.3d at 1036* ("*Cy pres* distributions must account for the nature of the plaintiffs' lawsuit, *the objectives of the underlying statutes*, and the interests of the silent class members, including their geographic diversity.") (emphasis added). This case is lacking that connection.

Furthermore, the Court agrees with those objections that to the extent there is enough money left in the settlement fund to fulfill the proposed *cy pres* award, that money should be distributed to the class members rather than the *cy pres* [*37] beneficiaries. Counsel fails to explain why the $75,000 *cy pres* award, to the extent it is available, should be reserved for the *cy pres* recipients when there may be class members who could make a claim to those funds. If all claims have been paid and there remains a balance in the settlement fund, then a *cy pres* award may be appropriate, but if there are claims outstanding and at least $75,000 available to pay those claims, that money should be used to pay claims of class members, not as a *cy pres* award.

In light of the above, the Court sustains the objections that (1) the *cy pres* award first should be used to pay class members' claims, and (2) the *cy pres* award does not comply with *Dennis*.

### III.

### CONCLUSION

As set out above, the Court overrules all objections to the settlement in this case with the exception of the two objections to the *cy pres* award. Unfortunately, this Court does:

> *not have the authority to strike down only the cy pres* portions of the settlement. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness," and we cannot "delete, modify or substitute certain provisions. The settlement must stand or fall [*38] in its entirety."

*Dennis, 697 F.3d 858, 2012 WL 3800230, at *9* (quoting *Hanlon, 150 F.3d at 1026*). Accordingly, the Court denies the joint motion for final approval of this class action settlement.[11] A telephonic status conference shall be held on **October 12, 2012**, at **1:30 p.m.**, at which time counsel should be prepared to address the further progress of this case.

> 11   In light of this ruling, the Court denies without prejudice Plaintiff's motion for an award of attorneys' fees, reimbursement of expenses and incentive award payments as moot.

**IT IS SO ORDERED**.

DATED: September 28, 2012

/s/ Dana M. Sabraw

HON. DANA M. SABRAW

United States District Judge